Argued January 19, affirmed February 10, petition for rehearing
denied March 7, petition for review
denied April 18, 1972

STATE OF OREGON, *Respondent, v.* RANDOLPH
DANIEL KEIPER (No. 7110), *Appellant.*

STATE OF OREGON, *Respondent, v.* WALLACE
LEE MOODY (No. 7113), *Appellant.*

493 P2d 750

*F. E. Glenn,* Deputy Public Defender, Salem, argued the cause for appellants. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Robert E. Brasch,* District Attorney, Coquille, argued the cause for respondent. With him on the brief was Richard L. Barron, Assistant District Attorney, Coquille.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

Defendants were jointly indicted for the first degree murder by drowning of Sarah E. Smith. They were tried separately. The jury in each case found the defendant therein guilty of second degree murder. Each has appealed from the resulting judgment. By agreement the appeals were consolidated, both for briefing and for argument. There are three identical assignments of error, namely: admission of a post-polygraph confession, denial of motion for judgment of acquittal, and acceptance of less than a unanimous verdict. The last assignment has been decided adversely to defendants in *State v. Gann,* 254 Or 549, 463 P2d 570 (1969).

In the course of the investigation into the death of Sarah Smith each defendant made both statements and a confession. The admission of the last of these, the "post-polygraph confession," constitutes the principal assignment of error in each case. The basis of this contention is set forth in appellants' brief as follows:

"After both defendants Keiper and Moody had

given statements, they were subjected to polygraph tests, advised of the 'gross deceptive patterns' and encouraged to now tell the truth. Because of the psychological coercion inherent in being caught in a lie, neither defendant was able to freely exercise his constitutional right to remain silent and therefore their post-polygraph confessions should not have been received in evidence."

Thus the coercion relied upon is that resulting from each defendant learning that his previous voluntary statements, when measured against his answers to a polygraph test, showed "gross deceptive patterns." Following the receipt of this information, each defendant made a statement to the police acknowledging substantial elements of his participation and that of the other in the murder, although the two confessions differed in many particulars.

A brief summary of matters relevant to this contention follows. From appellants' brief we learn:

"In the late evening of Thanksgiving Day, Thursday, November 26, 1970, one James Trumblin walked into the Portland Police Station and wanted confirmation that the body of a Sarah Smith had been found in Coos Bay. Portland Police telephoned Coos Bay Police who confirmed the death of Miss Smith and Trumblin was so informed. Trumblin made a phone call and then took Portland Detectives Todd and Cunningham to a Portland hotel where defendant Moody was staying.

"Defendant Moody agreed to go to the Portland Police Station and discuss Sarah's death. Moody, in the company of detectives Todd and Cunningham and Trumblin arrived at the Portland Police Station at about 12:20 a.m., Friday morning, November 27, and Moody was immediately advised of his constitutional privilege against self-incrimination. Thereafter Moody gave a tape-recorded state-

ment which in essence accused defendant Keiper of drowning Sarah Smith in Coos Bay."

Thereafter Keiper, who was also in Portland, was in due course arrested for the murder and Moody was held as a material witness. Keiper initially denied any knowledge of, or involvement in, the girl's death.

During the course of the investigation both defendants gave a number of statements to the police. The statements of each were not only contradictory with those of the other but in significant particulars inconsistent with their own previous statements. No *Miranda*[1] challenge to any of these statements is presented.

After the defendants had been taken back to Coos Bay and Keiper had been arraigned, each was asked whether he would submit to a polygraph test. Both voluntarily agreed to do so, knowing that the police did not accept their prior statements as true. Subsequently each was subjected separately and a day apart to the test. Following its conclusion each was told that the test revealed gross deceptive patterns. Each then acknowledged he had been lying and agreed to give a correct statement. A statement was then given by each defendant. Prior to both the polygraph test and the subsequent statement each was again fully advised of his rights. Indeed, Moody, though still held only as a material witness, was also expressly advised prior to the polygraph test that he could be prosecuted for murder in the case. In each case the defendant challenges the admissibility only of the post-polygraph statement.

The trial court, after conducting an extensive

---

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

hearing in each case, found beyond a reasonable doubt that all of the statements made both before and after as well as the taking of the polygraph test by each defendant were entirely voluntary, and that there was no violation of the *Miranda* rights of either defendant with respect to any of the statements or the taking by either defendant of the polygraph test. The record supports those conclusions. The court stated, however, it would not allow either the fact of the taking or the results of the polygraph test to be introduced as evidence in either trial. Neither party offered to introduce such evidence in either trial.

At the hearing on the motion to suppress, defendant Moody, in support of his claim that his post-polygraph statement was coerced, offered the testimony of a psychiatrist, who said:

"He has a life-long history of compliance with males in which he usually assumes a submissive role, in other words, he goes along with whatever someone stronger than he wants to do.

"He's done that all his life, and that includes the area of homosexuality. I think the fact that he was interviewed in a sweet-talking way would be very much—it would be very likely to raise his anxiety level, because this is somewhat reminiscent of how most homosexuals approach each other.

"Now, I'm sure that the officer did not intend any homosexual advances, but I think it would make Mr. Moody quite anxious.

"Q [Mr. Rossi]: In other words, what you are saying, Doctor, is—
"A Because I think he would be receiving it, partially as a homosexual advance * * * in a closed-room situation for the two and a half hours total with one man in a small room talking about things which were extremely anxiety-provoking

to Mr. Moody, I think that would come under coercion."

If we understand defendants' theory correctly, it is that a statement or confession of a defendant should be considered coerced and thus inadmissible if there are present at the time in the defendant's unconscious or conscious mind factors which create psychological pressures causing him to be willing to give the challenged statement or confession. Such a theory, if adopted, would not only greatly extend the existing legal concepts of improper coercion, but as a practical matter would abort the use of statements or confessions given to the police by a defendant in virtually every criminal case.

■ In determining the voluntariness of a statement or confession it is the totality of the circumstances based upon the historical facts of each case which governs. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); *Frye v. Gladden,* 1 Or App 629, 465 P2d 716 (1970); *Bram v. United States,* 168 US 532, 18 S Ct 183, 42 L Ed 568 (1897).

■ Our review of the historical facts surrounding the admissions and confession of each defendant satisfies us that the findings of voluntariness are amply supported by the evidence—more than sufficient, in the language of *Ball,* "to meet constitutional standards of due process." 250 Or at 487-88. They were correctly admitted.

Concerning the motions for judgments of acquittal we find it unnecessary to summarize the voluminous and sordid evidence. It is sufficient to say that there was ample evidence in each case to warrant its submission to the jury.

The judgment is affirmed.