Argued and submitted June 18, reversed
and remanded for trial September 15, 1982

STATE OF OREGON,
*Appellant,*

*v.*

SHELTON RAY KINKADE,
aka Shelton Ray Kincade,
*Respondent.*

(No. 10-81-11039, CA A23727)

650 P2d 972

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The state appeals an order of the trial court which suppressed a confession made by defendant to police. The only issue is whether the confession was voluntary.

The statements in question were made to two police officers who were investigating a theft of a motorcycle. Officer Jones learned from an informant that defendant had stolen the motorcycle and arranged with defendant over the telephone to meet with him at defendant's home. Officers Jones and McComas went to defendant's home at about 9:30 p.m., were invited in and conversed with defendant in his living room. Defendant's mother was in the kitchen. Officer Jones advised defendant of his *Miranda* rights, and he acknowledged his understanding of them and agreed to talk to the officers. He denied any knowledge of the stolen motorcycle.

After defendant's denial, he and officer Jones had a conversation that defendant alleges constituted a threat. Officer Jones testified that he talked to defendant for about five minutes after defendant's denial. He testified:

> "* * * I * * * explained to him I really did not want to spend a lot of time on something we were eventually going to come up with anyway, that I had prior knowledge that he had taken the motorcycles, and that it would take a little longer but we would eventually be able to prosecute him on the motorcycles."

Officer Jones later testified:

> "Q. Did you make any threats to him at that time to get him to talk? Tell him it would go easier on him if he talked?
>
> "A. No. My only communication at that time was that I tried to explain to him I really don't want to spend a lot of time on a case, especially when we're going to find out about it, and it's a lot easier to get it over the first time around and not have to keep coming back and spending a lot of time on something so simple."

Officer McComas corroborated Officer Jones' testimony. She testified that no threats or promises were made and that Officer Jones told the defendant that

"\* \* \* he likes people to tell him the truth, that when people don't tell him the truth it takes a lot of time because he has to go back and talk to several other people. And it's just a waste of time, so he wanted Mr. Kinkade to tell him the truth."

Defendant testified that he was informed of his *Miranda* rights, which he understood. He agreed that officer Jones told him that it would take a longer time and would be a waste of time if defendant did not confess, but testified that in addition, "he said if he has to come back and go through this stuff again, he's going to hang me." Officers Jones and McComas both denied that any such statement was made. Defendant testified that he took the statement as a threat that the police would bring additional charges if he did not confess. He testified that, if the officer had not made the statement he interpreted as a threat, he would have continued to deny involvement in the crime.

The trial court suppressed defendant's incriminating statements because of their involuntary nature. The court stated orally:

"Well, I don't feel that it's particularly important for me to decide whether the officer said 'I'll hang you' or not. I think that the words that the police officers acknowledge having said were calculated to, and reasonably could be expected to convey to the defendant the thought that if he didn't tell them the truth, and they didn't believe he was telling the truth, then they would have to keep coming back and this would be a waste of their time. And the implication being, 'I'm telling you this because if our time is wasted, we will become irritated and ill-disposed toward you, and you should know about this.' Again, the implication being this is not in your best interest that we become irritated over having our time wasted.

"Now, my guess is that this kind of statement is very effective in getting an admission and in conveying to a subject the thought that he's irritating and in danger of further irritating his interrogator and other police officers, and this is not in his best interest. And I think it's not unreasonable to believe that the public generally can believe that it is better not to have police officers irritated with you when you're involved in criminal justice, and that it can make a difference in how your case is dealt with at various stages, including prosecutorial discretion and so forth.

> "I believe that the statement was calculated to give that impression, and that it was reasonably calculated to give that impression. And whether Officer Jones said, 'I'll hang you,' or not, I can very well understand how the defendant might think at this time that he had said that, because I think the implication is there."

The trial court thus suppressed the confession because the *implied* threat of retaliation made it involuntary.

In determining if inculpatory statements are involuntary, it is not sufficient to find that the officer's statements or conduct may be coercive or threatening in the abstract. The totality of the facts and circumstances must be examined to ascertain whether in fact the challenged statement was a product of defendant's free will or was the result of coercion. *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973). The relevant surrounding circumstances include both the character of the accused and the details of the interrogation. Some of the factors taken into account include the youth of the accused, *Haley v.Ohio,* 332 US 596, 68 S Ct 302, 92 L Ed 224 (1948), his lack of education, *Payne v. Arkansas,* 356 US 560, 78 S Ct 844, 2 L Ed 2d 975 (1958), his intelligence, *Fikes v. Alabama,* 352 US 191, 77 S Ct 281, 1 L Ed 2d 246 (1957), the lack of advice to the accused of his constitutional rights, *Davis v. North Carolina,* 384 US 737, 86 S Ct 1761, 16 L Ed 2d 895 (1966), the length and location of the interrogation, *Ashcraft v. Tennessee,* 322 US 143, 64 S Ct 921, 88 L Ed 1192 (1944), and the use of any physical or psychological coercion, *Reck v. Pate,* 367 US 433, 81 S Ct 1541, 6 L Ed 2d 948 (1961). No single factor is controlling or assumes talismanic significance. The state has the burden of establishing the voluntariness of the confession.

Several cases from this court illustrate the application of the voluntariness standards. In *State v. Hovater,* 42 Or App 13, 599 P2d 1222 (1979), the police, after advising defendant of his constitutional rights, interrogated him in his home regarding possession of illegal drugs. They warned him of the serious consequences of the charge and the possibility of incarceration and separation from his children. We held that these statements, although containing elements of duress, did not render defendant's statements involuntary.

In *State v. Morris,* 32 Or App 457, 574 P2d 350, *rev den* 282 Or 537 (1978), the officer repeatedly admonished defendant to tell the truth during the police questioning and told him it would come out anyway. The officer then gave defendant a hypothetical situation in which two defendants are charged with the same crime and one defendant admits his responsibility while the other lies about his involvement. He asked the defendant to speculate how each defendant would be treated by the judge at sentencing. We reversed the trial court's order suppressing the confession as coerced.

In *State v. Keiper,* 8 Or App 354, 493 P2d 750, *rev den* (1972), two codefendants gave exculpatory statements to the police concerning a homicide. At the request of the police, both voluntarily agreed to take a polygraph test. The test showed substantial deception, and this fact was disclosed to the defendants. The defendants then confessed to the crime. They moved to suppress their confessions " '[b]ecause of the psychological coercion inherent in being caught in a lie, neither defendant was able to freely exercise his constitutional right to remain silent.' " 8 Or App at 356. Defendants produced evidence that their psychological makeup made them particularly susceptible to duress. We said:

> "If we understand defendants' theory correctly, it is that a statement or confession of a defendant should be considered coerced and thus inadmissible if there are present at the time in the defendant's unconscious or conscious mind factors which create psychological pressures causing him to be willing to give the challenged statement or confession. Such a theory, if adopted, would not only greatly extend the existing legal concepts of improper coercion, but as a practical matter would abort the use of statements of confessions given to the police by a defendant in virtually every criminal case." 8 Or App at 359.

We upheld the trial court's denial of the motions to suppress.

In this case defendant agrees that he was completely advised of his constitutional rights, understood them and voluntarily and knowingly waived those rights and agreed to talk to the officers. His sole contention is that his will to continue to deny involvement in the crime was

overborne by the implied threat to bring additional charges against him.

■     A review of the circumstances surrounding the interrogation convinces us that due process standards were not violated.[1] The record does not disclose defendant's age, but because he was prosecuted as an adult with no indication of a remand from juvenile court we assume that he is at least 18 years old. His testimony at the pretrial hearing indicates that he is at least of average intelligence. He testified that he had been arrested approximately 20 times in the past and was aware of his constitutional rights to remain silent and have an attorney present. He conceded that he had waived these rights and had agreed to talk to the officers. The questioning took place in his residence, and his mother was present. He was cooperative with the officers. No more than 10 minutes elapsed between the first contact with defendant and his incriminating statements. Defendant was made aware that the officers did not believe his statement denying involvement in the theft and that they had other evidence that he was involved. The coercion found by the trial court was an implied threat that if defendant did not tell the truth the officers' time would be wasted, that they would become irritated and that irritation of law enforcement agents is not in the defendant's best interest.

Even if we accept the court's findings as appropriate inferences from the evidence, we conclude that under all the circumstances, defendant's will to lie was not overborne by improper police tactics. The court erred in suppressing the confession.

Reversed and remanded for trial.

---

[1] Neither party addresses the possible application of ORS 136.425(1).