Argued and submitted July 21, affirmed September 28, 1983

## STATE OF OREGON,
*Appellant,*

*v.*

## GARY WESTON CAPWELL,
*Respondent.*

(136,657; A27187)

669 P2d 808

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Carla D. Thompson, Salem, argued the cause and filed the brief for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Newman, Judge.

NEWMAN, J.

## NEWMAN, J.

Defendant was indicted for sexual abuse in the first degree. ORS 163.425. Prior to trial, he moved to suppress a confession he made at the time of his arrest on the ground that it was made involuntarily. After a hearing, the trial court granted defendant's motion. The state appeals under ORS 138.060(3). We affirm.

On September 9, 1982, at approximately 9:30 a.m., State Troopers Reed and Glover went to defendant's home to investigate a charge of sex abuse made by defendant's two minor daughters. Reed introduced himself to defendant and explained why the troopers were there. Defendant was not placed under arrest, and his girlfriend was present throughout most of the subsequent questioning. Reed explained that defendant's daughters had complained that defendant had shown them his erect penis, had the children touch it and had masturbated in front of them, and that those acts constituted a criminal offense. Reed also told defendant that treatment programs were available and that a court would have the option of permitting defendant to participate in treatment rather than incarcerating him. Reed described the conversation as follows:

"Q [Prosecutor]: Okay and what else was said at that point?

"A [Reed]: I discussed with him that if he was going to talk with us that it is policy of Childrens Services Division, if he is going to seek any treatment, he has to admit to it first. Otherwise, he would not be eligible for their treatment.[1] I also explained to him that this was an offense that he would be arrested for and have to go through criminal proceedings and at the time of trial if he was convicted it would be up to the Court ultimately as to whether or not he got treatment or he was sentenced.

"Q Sentenced to the penitentiary?

"A Right.

"* * * * *

"Q [Defense Counsel]: So you didn't tell him if he confessed things would go easier on him?

---

[1]Neither party disputes the accuracy of Reed's advice to defendant.

"A [Reed]: I told him if he admitted it that he would be eligible for treatment through CSD if at a later point in time the Court decided that was to occur. I also told him if he never admitted to it, he would not be eligible for that program.

"* * * * *

"Q But you did tell him if he admitted to what he was charged with, CSD would be able to give him some treatment?

"A I told him that he would be eligible for treatment.

"Q But, you told him if he didn't admit to it, he wouldn't be eligible for treatment?

"A That is correct.

"Q Did you explain to him what difference that would make?

"A I told him they won't accept somebody that didn't admit to it.

"* * * * *

"Q I see. You didn't mention anything about the fact that he would have to go through CSD's program to see his kids, isn't that the upshot of what you're telling me?

"A No. *I think what the conversation really centered around there was treatment as opposed to incarceration.*

"Q So you told him if he went to — if he could get into CSD's program that that was an alternative to incarceration? That he had to admit to it first, that is just what you just said.

"A *No I said — yeah if CSD would take him into the program that might be an option instead of being incarcerated if he just wanted to deny it.*" (Emphasis supplied.)

The officers were polite and put no pressure on defendant, who seemed sober and to understand what was happening. After the conversation described above, Reed advised defendant of his *Miranda* rights, which defendant acknowledged indicating that he understood. Defendant then confessed to Reed, who reduced defendant's statements to writing. As Reed was leaving, he told defendant that the statement would be submitted to the grand jury and that an arrest warrant would follow.

The trial court made the following findings of fact and conclusion of law:

"1) Defendant was interviewed in his own home by Trooper Jim Reed and Trooper Glover. His

girlfriend was also present. Defendant was awakened for the interview.

"2) At the time defendant was interviewed he was not under arrest nor in custody; but was the sole suspect of an alleged crime.

"3) The police officers did not threaten the defendant or lie to the defendant.

"4) Trooper Reed and Trooper Glover were not in uniform but were armed.

"5) Trooper Reed told defendant who he was and that Trooper Reed was investigating a sex abuse case which involved allegations that defendant had sexual contact with defendant's daughter.

"6) Trooper Reed discussed that if defendant was truthful and admitted the acts defendant would qualify for a treatment program instead of being incarcerated and he fully and completely explained the CSD treatment program before any Miranda Warning was given. This conversation took approximately fifteen minutes.

"7) Trooper Reed did not promise defendant that defendant would not go to jail but told defendant that getting treatment was the primary purpose and was an option which a Court would consider.

"8) After this discussion and just prior to defendant making a statement, defendant was advised of his Miranda rights; Defendant understood his Miranda rights; Defendant had no question about his Miranda rights; and defendant gave a statement to Trooper Reed.

"9) Defendant and the other witness were both convinced that by telling the truth, he would not go to Court.

"Based upon the above findings of fact the Court makes the following conclusion of law: Any confession or admissions made by Defendant were predicated upon the implied promise that treatment, not incarceration, would be the outcome and defendant would not be required to attend Court."

The findings of fact are supported by substantial evidence in the record, and we are bound by them. We must determine whether the court's conclusion that defendant's confession was involuntary is constitutionally correct. *State v.*

*Warner,* 284 Or 147, 156-57, 585 P2d 681 (1978); *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

Defendant asserts that his confession was induced by Reed's implied promise that, if he admitted the charges, he would not face criminal prosecution. Defendant argues that his confession, therefore, was given involuntarily under both the state and the federal constitutions. Art I, § 12 of the Oregon Constitution reads in pertinent part as follows:

> "No person shall be * * * compelled in any criminal prosecution to testify against himself.—"

Because we find that defendant's confession was obtained in violation of the Oregon Constitution, we do not reach the federal constitutional question. *See State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983).

Article I, section 12 prohibits the use of a confession which has been induced by a direct or implied promise. *State v. Mendacino,* 288 Or 231, 239 n 6, 603 P2d 1376 (1979); *State v. Wintzingerode,* 9 Or 153, 163 (1881). The issue before us, therefore, is whether Reed's statements reasonably can be construed as impliedly promising that defendant would get treatment instead of incarceration if he admitted the criminal charges.

In *State v. Ely,* 237 Or 329, 390 P2d 348 (1964), a school teacher was accused of having sexually abused one of his pupils. The child's father reported the incident to school officials. Shortly thereafter the boy's father, the school superintendent and the school principal confronted the teacher. The group represented to Ely that, if he confessed, got medical counseling and refrained from teaching, they would not press criminal charges. Ely admitted that the charges were "partly true" and agreed to sign a confession. He later was indicted for and convicted of the statutory offense of Contributing to the Delinquency of a Child. At trial, the court, over the defendant's objection, admitted the confession. The Supreme Court reversed, holding that the confession was involuntary, because the group had impliedly promised to Ely that, if he confessed, he would not face any criminal prosecution.

The state argued that the circumstances surrounding the confession established that it was voluntarily given. Ely was not in custody when he confessed, and the group had

warned him that they could not guarantee that someone else would not prosecute him. The group also told Ely that the statement he was making could be used against him and that signing it ended his teaching career. The court, however, found that, taken as a whole, the evidence established that the confession was induced by an implied promise of immunity from prosecution. Although the group had explained that the representation of immunity from prosecution extended no further than the three parties comprising the group, the court stated:

> "The defendant could have believed that if these three men would not prosecute him no one else was likely to do so. The state's own testimony, therefore, would support a finding that the confession was induced by an express or implied promise of immunity from prosecution. Such a confession, if so given, would be involuntary as a matter of law. *State v. Bodi,* 223 Or 486, 491, 354 P2d 831 (1960)." 237 Or at 334.

Here, as in *Ely,* the police officers did not threaten or lie to defendant. Reed, however, summarized the substance of his conversation with defendant as having centered around defendant receiving treatment "instead of" or "as opposed to" being incarcerated, if he admitted the charges. The trial court found that, although the officers did not expressly promise defendant that he would not go to jail, they did tell him that "getting treatment" was an option the court would consider and "was the primary purpose." Reed's statements contain the implication that, if defendant confessed, he would receive treatment, but, if he did not confess, he would face criminal prosecution. Under those circumstances, it was reasonable for defendant to have concluded that Reed was telling him that if he confessed to the charges he would receive treatment rather than face criminal prosecution.

The state argues that this court's opinion in *State v. Kinkade,* 59 Or App 192, 650 P2d 972 (1982), supports reversal here. We disagree. In *Kinkade,* we reversed the suppression of inculpatory statements made after the arresting officer told the defendant that he (the officer) liked people to tell him the truth because otherwise it took up his time and he did not like to waste his time. The defendant claimed to have inferred from those statements a threat that, if he did not confess, the officer would become irritated with him and press additional charges. Under the circumstances surrounding Kinkade's confession, as well as the content of the officer's statements, we concluded

that Kinkade's will was not overborne by improper police tactics. Here, by contrast, Reed admitted that the substance of the advice he gave defendant consisted of contrasting treatment with incarceration. Defendant's inference that his confession would insure him of treatment rather than eventual incarceration was reasonable under the circumstances, and the trial court did not err in suppressing it.

Affirmed.