Argued and submitted February 29, 1984, affirmed January 23, reconsideration denied
March 8, petition for review denied August 27, 1985 (299 Or 732)

# STATE OF OREGON,
*Respondent,*

*v.*

# STEVEN MARK BOUNDS,
*Appellant.*

## (10-82-05974; CA A29086)

694 P2d 566

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals his conviction for sodomy in the first degree, ORS 163.405, claiming that his confession was involuntary and the court erred in admitting evidence of the victim's statements to her mother. We affirm.

The victim is defendant's four-year-old daughter. Defendant and his wife were separated at the time of the events described in this case. Evidence at trial established that, at approximately 2:30 p.m. on July 3, 1983, defendant picked up his daughter at his wife's house and took her to his house. At approximately 5:00 p.m., the victim's mother joined defendant and her daughter at defendant's house. She noticed that her daughter had a bruise on her face and the child told her immediately that defendant had slapped her. Defendant denied it. The three of them had dinner. Mother and daughter left at approximately 7:30 p.m. The mother's testimony explained as follows:

"Q. [BY DEPUTY DISTRICT ATTORNEY]: And on the way home, tell us what happened?

"A. Well, on the way home —

"Q. You walked home, right?

"A. Yes. We didn't live far enough to do anything but walk, so on the way home she started telling me what happened.

"Q. What did she tell you?

"A. Well, she told me that he had slapped her. And I didn't know what else was about to come up, so we were still pretty close to his house, so I asked her if she would just wait till we got a little farther down the road. So I waited till we were about a block away and then I — I asked her what went on, and she told me that he had slapped her, that he had taken her clothes off and put lotion on her and that he had stuck his penis in her.

"Q. Did she say where?

"A. Yes, she pointed and told me her behind.

"Q. Did she say anything else?

"A. Not that I can remember."

The victim's mother then called the police and took the child to the hospital. The medical examination showed a

bruise on the child's right cheek and a reddened area along the right side of her perineal region around her vagina and anus area consistent with sexual abuse. The victim related essentially the same story to the emergency room doctor that she told her mother earlier.

On July 9, 1983, a police captain for the City of Oakridge contacted defendant at his place of employment. The officer took defendant to the Oakridge Police Department and read him his *Miranda* rights. The officer started talking to defendant and told him that, if he thought he had a problem, maybe this was the best way to get himself some help. He explained that there would be charges but that the courts and the district attorney were not going to "crucify" him.

Defendant confessed. He said that he was taking care of his daughter and rubbed some lotion on her body after he took her clothes off. He laid her on her stomach and entered her anus approximately one inch with his penis. She said that it hurt, and he took her to the bathroom and wiped her. He checked to ensure that there was no bleeding. Then he washed her off with a wash cloth and put it in the laundry. Defendant wrote a statement to this effect.

Defendant pled not guilty to the charge of sodomy in the first degree. Following a trial to the court, he was found guilty and sentenced to the custody of the Corrections Division for a period not to exceed seven years.

In his first assignment of error, defendant claims that the court erred in denying his motion to suppress his statement to police, because the officer induced his confession by offering treatment as opposed to any criminal sanction against defendant.

A confession induced by an express or implied promise of immunity from prosecution is involuntary as a matter of law. *State v. Ely,* 237 Or 329, 334, 390 P2d 348 (1964); *State v. Bodi,* 223 Or 486, 491, 354 P2d 831 (1960). Defendant claims that our decision in *State v. Capwell,* 64 Or App 710, 669 P2d 808 (1983), requires reversal in his case. In *Capwell,* we found an implied promise of immunity from prosecution, when the substance of the officer's conversation with the defendant was that the defendant would receive treatment "instead of" or "as opposed to" being incarcerated, if he admitted the charges.

In this case, as in *Capwell,* the issue is whether the officer's statements reasonably can be construed as impliedly promising that defendant would get treatment instead of incarceration if he admitted the criminal charges. The trial court found no such express or implied promise, and the evidence supports that conclusion. Defendant's claim of coercion rests solely on a statement by the officer that the courts and the DA were not going to "crucify" him if he confessed. Although defendant, on hearing this statement, may have inferred on his own that it would go easier on him if he admitted his acts, the statement does not amount to a promise of immunity from prosecution rendering the confession involuntary as a matter of law. Defendant was told he would be prosecuted. The totality of the facts and circumstances convinces us that defendant's confession was not coerced and need not be suppressed.

▬▬ In his second assignment of error, defendant claims that the trial court erred when it permitted the victim's mother to testify as to statements made by the child set out earlier in this opinion. Over defendant's objection on hearsay grounds, the court ruled that the statements were admissible as substantive evidence under OEC 804(3)(f), which provides:

"The following are not excluded by ORS 40.455 if the declarant is unavailable as a witness:

"* * * * *

"(f) A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this paragraph unless the proponent of it makes known to the adverse party the intention to offer the statement and the particulars of it, including the name and address of the declarant, sufficiently in advance of the trial or hearing, or as soon as practicable after it becomes apparent that the statement is probative of the issues at hand, to provide the adverse party with a fair opportunity to prepare to meet it."

The state and defendant stipulated that the declarant

was incompetent to testify because of her age; for this reason she was unavailable as a witness.[1] We conclude that her statements have "equivalent circumstantial guarantees of trustworthiness" to those admissible under the specific hearsay exceptions. The victim was four years old, and her statements were made within the first few minutes that she was outside of defendant's presence after the sexual attack and while she continued to suffer the pain of the assault. The child's statement was corroborated by the physical evidence on her person. The slap mark on her face was visible. The examining physician observed a reddened area along the right side of the perineal region consistent with the sexual attack described. *See United States v. Nick,* 604 F2d 1199 (9th Cir 1979). There is no hint or suggestion of sexual activity in the mother's inquiry as to the mark on the child's face. In fact, the mother testified she "didn't know what else was about to come up." Indeed, the very nature of the sodomy described and the use of a lubricating lotion are of a sophistication beyond the

---

[1] OEC 804(1) defines unavailability as follows:

" 'Unavailability as a witness' includes situations in which the declarant:

"(a) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of a statement;

"(b) Persists in refusing to testify concerning the subject matter of a statement despite an order of the court to do so;

"(c) Testifies to a lack of memory of the subject matter of a statement;

"(d) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

"(e) Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance (or in the case of an exception under paragraph (b), (c) or (d) of subsection (3) of this section, the declarant's attendance or testimony) by process or other reasonable means."

Although incompetency due to age is not expressly listed as a situation of unavailability, we think that it qualifies. We note that the opening phrase "includes situations" indicates that the list is not intended to be exhaustive. It is possible to read the language of subsection (d) concerning "mental infirmity" as including incompetence due to youth, but we think that would do violence to the literal meaning. In accord with the following state and federal case authorities, we hold that "unavailability of a witness" includes the situation in which a declarant is incompetent to testify because of age: *State ex rel Gladden v. Lonergan,* 201 Or 163, 182, 269 P2d 491 (1954); *Haggins v. Warden, Fort Pillow State Farm,* 715 F2d 1050, 1055 (6th Cir 1983), *cert denied* 104 S Ct 980 (1984); *Ellison v. Sachs,* 583 F Supp 1241 (D Md 1984); *People v. Orduno,* 80 Cal App 3d 738, 145 Cal Rptr 806 (1978), *cert denied* 439 US 1074 (1979).

common realm of a four year old's knowledge and imagination. Finally, and perhaps most convincingly, there is no indication that the child had opportunity, reason or ability to fabricate such a story, and her accusation was consistent in every significant detail with defendant's valid confession.[2] It is extremely unlikely that this child fabricated the statements.

The victim's statements clearly were offered as evidence of a material fact. They were offered to corroborate defendant's confession and are more probative on that point than any other evidence which the prosecution reasonably could produce. We also think that the general purposes of the Oregon Evidence Code and the interests of justice are served by admission of the victim's statements. The trial court did not err in admitting these statements under OEC 804(3)(f).[3] *See State v. Hollywood,* 67 Or App 546, 680 P2d 655 (1984).

Affirmed.

---

[2] The mother's testimony as to the child's statements was not the only evidence in this case to supply the corroboration for defendant's confession required by ORS 136.425(1). The emergency room physician testified as to the child's description of the attack, but was not allowed to identify the assailant. That testimony was not assigned as error and is sufficient evidence from which a factfinder could draw an inference that tends to establish that a crime had been committed. *See State v. Lerch,* 296 Or 377, 398, 677 P2d 678 (1984).

[3] No objection was made to this evidence based on the confrontation clause.