Raymond Richard OLDSEN, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 84SC462.

Supreme Court of Colorado.

Dec. 15, 1986.

Rehearing Denied Feb. 9, 1987.

David F. Vela, State Public Defender, Michael J. Heher, Deputy State Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review the court of appeals' decision in *Oldsen v. People*, 697 P.2d 787 (Colo.App.1984), upholding the admission, in a prosecution for sexual assault on a child, of out-of-court statements of the child victim about the nature of the sexual contact and the identity of the perpetrator. The court of appeals held that the hearsay statements were properly admitted under CRE 803(4), the "medical exception" to the hearsay rule. Although we disapprove the court of appeals' rationale for admission of the statements, we determine that the statements were sufficiently trustworthy to qualify as an exception to the hearsay rule and affirm the judgment of the court of appeals.

I.

On April 13, 1982, the defendant, Raymond Richard Oldsen, was charged with second degree sexual assault, sexual assault on a child, aggravated incest, and

child abuse for a series of alleged incidents of sexual contact between Oldsen and his five-year-old daughter in the latter part of 1981. Before trial, the defendant moved that his daughter, then six years old, be disqualified from testifying under section 13–90–106(1)(b), 6 C.R.S. (1978).[1] At the in limine hearing on the daughter's competency to testify, the daughter did not respond to most of the questions asked of her, and the court stated "that from the Court's observation she is incapable of understanding the nature of an oath and receiving accurate cognitive impressions; and that she is too young to communicate and relate circumstances of her life factually to the satisfaction of this Court...." A social worker, who was the daughter's psychotherapist, then testified that the daughter loved her parents and was afraid that they were angry with her for telling about what her father had done to her. The daughter, therefore, was reluctant to talk with anyone about what had happened. The social worker also observed that the daughter's allegations for the most part had been very consistent. The daughter's reason for retracting her original statements on several occasions, according to the social worker, was her hope that the Douglas County Department of Social Services (the department), which had removed the daughter from her home on January 18, 1982, would allow her to go home immediately. The court granted the motion to disqualify the daughter from testifying.

At trial, the prosecution called as witnesses a school psychologist, a physician, an investigator with the district attorney's office, and the social worker, all of whom had examined or talked with the daughter in their professional capacities. Over the defendant's repeated objections, the four witnesses recounted statements concerning the alleged offenses made to them by the daughter.

The school psychologist testified that the daughter's kindergarten teacher asked her in November, 1982, to see the daughter because the daughter was having trouble in school. The psychologist administered a battery of tests of the daughter. As part of her testimony about the results of the tests, the psychologist stated that the daughter told her that she was hurt when the defendant tried unsuccessfully to place his penis in her vagina; that the defendant stepped on her younger brother's hand to prevent the brother from telling their mother about the incident; that she would be spanked if she mentioned the incident to her mother; and that she had touched the defendant's penis. The psychologist reported what she learned from the child to the department, and both children were removed from the home.[2]

The department referred the daughter to a physician, Dr. Hendrika B. Cantwell, who examined her in late January, 1982. The physician testified that she observed a small tear scar on the daughter's somewhat enlarged vaginal opening and that, when she asked the daughter who had caused the injury, the daughter replied "daddy." The physician also testified that the daughter told her the injury was caused by her father's penis and that she was told by her father "not to tell anybody."

1. Section 13–90–106(1)(b) disqualifies as witnesses "[c]hildren under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined or of relating them truly."

After the conclusion of the defendant's trial, section 13–90–106 was amended by the addition of section (1)(b)(II) which declares that the statutory proscription

does not apply to a child under ten years of age, in any civil or criminal proceeding for sexual abuse, sexual assault, or incest, when the child is able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined.
Colo.Sess.Laws 1983, ch. 172, § 1 at 635.

2. A court order in the dependency and neglect action filed by the department limited the parents and the daughter to visits in the presence of a department caseworker apparently because of efforts by the mother and a maternal aunt to persuade the daughter to recant her statements initially made to the psychologist. The social worker testified that the mother did not believe the statements.

An investigator for the district attorney's office testified that she brought several anatomically correct dolls to a meeting with the daughter in the latter part of January, 1982. According to the investigator, the daughter told her that she and her father had slept together and that, when asked how they slept together, the daughter placed a little girl doll, without clothes, on top of a nude male doll. The investigator testified that the daughter said that she did not like to touch her father but that he wanted her to touch his penis.

The department also referred the daughter to the social worker, Dr. Patricia Mrazek, who saw the daughter on a number of occasions before trial.[3] At trial, in response to defense counsel's objection to the social worker's testimony, the court ruled that

> [t]his particular witness, as previously testified, was cognizant that the little girl was uncommunicative in a verbal sense and has laid out the foundation of her approach in having the child make a picture and drawing the child out in a professional way that would not be available to the Court through the questioning of counsel.

The court then allowed the social worker to testify on the ground that her testimony about what the daughter had told her was trustworthy. The social worker stated that the daughter told her in response to questioning, "Daddy put his penis in me ... all the way." When asked how many times this had happened, the daughter said "lots of times, millions."

The defendant testified that he never had had sexual contact with the daughter. The mother of the daughter testified that she did not believe that her husband had assaulted their daughter. Several other witnesses testified to the defendant's trustworthiness and good relationship with his children.

The jury returned guilty verdicts on all four counts in the information. The defendant appealed to the court of appeals, arguing that the convictions were tainted by the admission of the daughter's hearsay statements. The court of appeals affirmed the convictions with one judge dissenting. The court held that the statements introduced through the testimony of the social worker, the psychologist, and the physician were properly admitted under CRE 803(4), the "medical exception" to the prohibition against hearsay evidence. The court also decided that although CRE 803(4) did not allow admission into evidence of the daughter's statements through the testimony of the investigator, their admission was harmless because they reiterated statements properly admitted.

## II.

It is undisputed that the daughter's statements repeated in the testimony of the four prosecution witnesses were hearsay. CRE 801(c) defines hearsay as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 802 provides that "[h]earsay is not admissible except as provided by [the rules of evidence] or by the civil and criminal procedural rules applicable to the courts of Colorado or by any statutes of the State of Colorado."

The question before us on certiorari is whether the daughter's statements were properly admitted under CRE 803(4), which provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

---

**3.** The social worker, who has a doctorate in family studies and is a family counselor, testified at the in limine hearing that the parents' anger toward their daughter for having reported the alleged assaults prevented the daughter from being able to communicate without difficulty about what had happened to her. At the time of trial, the social worker, along with the parents' therapist, was trying to open communication with a series of tape recordings, made during therapy sessions, to be sent between the parents and the daughter.

The rationale behind the exception is that the trustworthiness of statements made for the purpose of medical treatment or diagnosis "is assured by the likelihood that the patient believes that the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides...." C. McCormick, *McCormick on Evidence* § 292 at 839 (E. Cleary 3d ed. 1984).

The court of appeals examined the applicability of CRE 803(4) in a case involving sexual abuse of children in *People ex rel. W.C.L., Jr.*, 650 P.2d 1302 (Colo.App.1982). The trial court in that case had found the child victim incompetent to testify. However, the trial court permitted a physician to testify under CRE 803(4) to statements the child made to him about the circumstances of the offense and the identity of the assailant. The court of appeals determined that CRE 803(4) did not warrant the admission of the statements because there was "nothing in the record ... which would establish that the victim understood, or was aware of, the purpose of the questioning by the doctor." *W.C.L.*, 650 P.2d at 1304. "Without such a foundation," the court stated, "the basis for the exception was lacking." *Id.* The court held, how-

ever, that the statements were admissible under the "residual exception" to the hearsay rule, now found in CRE 803(24),[4] although at the time of the decision the residual exception was not part of the Colorado Rules of Evidence. On appeal, this court declined to sanction the court of appeals' adoption of the residual exception and reversed the judgment. *W.C.L. v. People*, 685 P.2d 176 (Colo.1984). We agreed with the court of appeals that "the victim's statements [did] not fall within the exceptions to the hearsay rule codified in the Colorado Rules of Evidence" in force at the time, including CRE 803(4). *Id.* at 178.

■■■ There are significant factual similarities between *W.C.L.* and this case. Here, as in *W.C.L.*, the child declarant was found incompetent to testify because she appeared incapable of relating just impressions of the facts.[5] § 13–90–106(1)(b), 6 C.R.S. (1978). And, as in *W.C.L.*, there is no evidence in the record that despite the daughter's testimonial disability,[6] she nonetheless was capable of recognizing, at the time the challenged statements were made, the need to provide accurate information for purposes of medical diagnosis or treatment within the meaning of CRE 803(4).[7]

4. CRE 803(24), adopted November 15, 1984, provides:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

5. In *W.C.L.*, 685 P.2d at 178, n. 1, the child victim did not know what "to tell the truth" meant.

6. A finding that a child is incompetent to testify under section 13–90–106(1)(b), 6 C.R.S. (1978),

does not automatically render inadmissible all hearsay statements of the child, as long as the reliability of the statements is ensured by circumstances bringing them within the scope of an exception to the hearsay rule. *See, e.g., Lancaster v. People*, 200 Colo. 448, 615 P.2d 720, 722 (1980) (testimonial incapacity of declarant under section 13–90–106 does not affect applicability of *res gestae* exception to declarant's hearsay statements); *see also* Comment, *Evidentiary Problems in Criminal Child Abuse Prosecutions*, 63 Geo.L.J. 257, 270 n. 77 (1974). However, where the asserted exception depends on the declarant's ability to understand the purpose of questioning and to relate accurate information, it is significant that the declarant has been disqualified under section 13–90–106(1)(b).

7. The prosecution, as the proponent of the daughter's hearsay statements, had the burden to establish the foundation for admitting the statements under an exception to the hearsay rule. *People in Interest of R.L.*, 660 P.2d 26 (Colo.App.1983); *United States Fidelity & Guaranty Co. v. Young Life Campaign, Inc.*, 42 Colo. App. 298, 600 P.2d 79 (1979).

In the absence of such evidence, there was no basis under CRE 803(4) in either case for admitting the statements.[8]

There is, however, an overriding difference between this case and *W.C.L.* The trial court in *W.C.L.* admitted the child victim's statement to her aunt under CRE 803(2), the excited utterance exception to the hearsay rule, and the victim's statement to the doctor under CRE 803(4), the medical diagnosis exception. The court of appeals in *W.C.L.* grounded its ruling on a court-fashioned exception to the hearsay rule, circumstantial guarantees of trustworthiness. We reversed the decision of the court of appeals on the basis that adoption of a residual hearsay exception should be in the context of rule-making with a public hearing and a uniform effective date. In the instant case, tried between the court of appeals' decision in *W.C.L.* and our overruling of that decision, the district court found that the hearsay statements of the victim met the circumstantial guarantees of trustworthiness articulated by the court of appeals in *W.C.L.* Although the district court admitted the evidence at issue here under a legal standard subsequently determined by this court to be erroneous, this case, if retried, would be governed by the now-adopted residual exception to the hearsay rule, CRE 803(24), *see* note 4 *supra*, which codified the "circumstantial guarantees of trustworthiness" standard already applied by the district court to the challenged testimony. *See Splawn v. California*, 431 U.S. 595, 97 S.Ct. 1987, 52 L.Ed.2d 606 (1977) (rules relating to admissibility of evidence are procedural in nature and do not violate *ex post facto* clause); *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (retroactive changes in evidentiary rules are not *ex post facto* laws unless harsh or oppressive).

The district court's rulings that the testimony was trustworthy are supported by the record. The court ruled that the physician, who was the prosecution's first witness at trial, laid the foundation for admission of the daughter's hearsay statements through the school psychologist, the investigator and the social worker with testimony that established an incentive to tell the truth and no incentive to falsify. Defense counsel stipulated to the physician's qualifications as an expert in pediatrics and child abuse. The physician testified that the daughter had a difficult time talking about what her father allegedly had done, but that her description of what happened was very clear. According to the physician, children of the daughter's age don't invent allegations of the sort at issue here and they often have difficulty talking about what happened. The physician concluded that what the daughter told her "was not a product of her imagination." From this testimony the district court found that young children ordinarily do not recognize past events that did not occur or respond to stimuli such as the anatomically correct dolls without a basis for doing so. The court determined that the prosecution had established the foundational requirements that the hearsay statements were supported by circumstantial guarantees of trustworthiness and that the statements were necessary because it had ruled that the daughter was incompetent to testify.

As discussed in footnote 6, *supra*, a finding that a child is incompetent to testify does not automatically render inadmissible all hearsay statements of the child, as long as the reliability of the statements is en-

---

**8.** The court of appeals, in affirming the judgment of conviction, decided that our opinion in *W.C.L. v. People*, 685 P.2d 176 (Colo.1984), was not controlling in this case because in *W.C.L.* we "[o]mitted ... any ruling on whether the statements to the doctor were admissible under the medical exception to the hearsay rule...." 697 P.2d at 789. However, as noted *infra*, and as recognized by the dissent, in *W.C.L.* we specifically upheld the court of appeals' determination that the challenged statements did not fall under any exception to the hearsay rule codified in the Colorado Rules of Evidence, including CRE 803(4). We also stated in footnote 8 of *W.C.L.*, 685 P.2d at 181, referred to by the court of appeals, 697 P.2d at 788, *"[b]ecause the evidence was insufficient to establish that the child could appreciate the significance of providing accurate information to the physician, we do not reach the question of whether the identification of W.C.L. was reasonably pertinent to diagnosis or treatment."* (Emphasis added.)

sured by circumstances bringing them within the scope of an exception to the hearsay rule. *Lancaster v. People,* 615 P.2d 720, 722 (Colo.1980). *See also United States v. Nick,* 604 F.2d 1199 (9th Cir.1979); *D.A.H. v. G.A.H.,* 371 N.W.2d 1 (Minn.App. 1985) (father objected to testimony about three-year-old daughter's statements made in session with psychologist using anatomically correct dolls and to testimony by pediatrician and abuse center counselor about daughter's statements describing how father sexually abused her; court ruled that disputed testimony comported with equivalent guarantees of trustworthiness required under Rule 803(24) because among other reasons fabrication of such a story by child is unlikely and experts believed child had not fabricated story); *State v. Bounds,* 71 Or.App. 744, 694 P.2d 566 (1985).

Although the district court's initial ruling on the daughter's testimonial competency in this case referred to the daughter's inability to receive "accurate cognitive impressions" as well as her inability to understand the nature of an oath or relate the factual circumstances of her life, the court's ruling came immediately after the child essentially had refused to answer any questions. Once the court had heard additional testimony at the in limine competency hearing and as the trial progressed, the court became persuaded, on the basis of the testimony of the psychologist, the physician and the social worker, that the hearsay testimony relating the daughter's statements was trustworthy. In response to an argument by defense counsel that the court's early ruling that the child was incapable of receiving just impressions of the facts prevented consideration of any hearsay testimony relating statements by the child, the court clarified its earlier ruling by finding that the daughter "was unavailable to testify because of her psychological complex about the whole subject matter."

The district court, following the controlling case law at the time, determined that all of the challenged hearsay testimony was supported by circumstantial guarantees of trustworthiness. We can ascertain

from the record that the other requirements of CRE 803(24) were met: the statements were offered as evidence of material facts; the statements were more probative on the points for which they were offered than any other evidence that reasonably could be procured; the general purposes of the rules of evidence and the interests of justice were best served by the admission of the statements; and the defendant had adequate notice in advance of trial that the prosecution intended to offer the statements. Therefore, although we disapprove the court of appeals' application of the medical diagnosis exception to the child's statements to the physician, the psychologist and the social worker, we conclude that the defendant's convictions should be affirmed because the district court admitted the challenged testimony as circumstantially trustworthy.

Judgment affirmed.

ERICKSON, J., dissents.

ERICKSON, Justice, dissenting:

I respectfully dissent. Based upon our decision in *W.C.L. v. People,* 685 P.2d 176 (Colo.1984), I would reverse the court of appeals and remand for a new trial.

The defendant has been convicted of a heinous crime based upon interviews with the defendant's five-year old daughter that were conducted by social workers, a psychologist, and a pediatrician. In this case, as in *W.C.L.,* the trial court made a specific finding that the minor victim was incompetent to testify. Section 13–90–106(1)(b), 6 C.R.S. (1973). The majority acknowledges that under the standards that existed at the time of trial, the victim was incompetent to testify and that the defendant's conviction is only supported by the hearsay evidence provided by the experts that interviewed the defendant's minor daughter.

I concur with the majority in holding that none of the hearsay statements were admissible under the medical diagnosis exception to the hearsay rule. *See* CRE 803(4), majority op. at 1135–1136. I write separately to express my disagreement with the

way in which the majority justifies affirmance of the defendant's conviction. In my view, a new trial is required to permit the district court to determine whether the admission of the challenged testimony is proper under the residual hearsay exception of CRE 803(24).

I agree with the majority that, on retrial, this case would be governed by the residual exception to the hearsay rule, CRE 803(24). Majority op. at 1136. The record before us, however, is confused and it is impossible to determine the precise grounds upon which the testimony was admitted. Moreover, the basis for the victim's testimonial incapacity appears to preclude a finding of equivalent guarantees of trustworthiness required for the purposes of determining admissibility under CRE 803(24). Finally, the parties have not had the opportunity to brief the application of the residual hearsay exception to this case. In my view, the record does not justify the inference of foundation for the admission of the testimony under CRE 803(24).

The majority opinion is based, in large part, on the majority's view that the trial court relied on the residual hearsay exception of the court of appeals decision in *People ex rel. W.C.L.*, 650 P.2d 1302 (Colo. App.1982), which was reversed by *W.C.L. v. People*, 685 P.2d 176 (Colo.1984). Yet the record demonstrates that Dr. Cantwell's testimony was originally admitted solely under the medical diagnosis exception of CRE 803(4). Dr. Cantwell, through the hearsay statements of the minor victim, identified the defendant as the perpetrator under the medical diagnosis exception because, in the trial judge's view, medical diagnosis in the child abuse context required prevention of future abuse by identifying the perpetrator. Although the prosecutor cited *W.C.L.* repeatedly, the trial court did not admit testimony on the authority of *W.C.L.* until the prosecutor inquired into matters that were obviously not within the medical diagnosis exception. By this time, the damage had been done. The defendant was identified as the assailant by Dr. Cantwell's recital of the child's statements. The minor victim's hearsay

statements were irrefutably reliable as the opinion of an expert in child abuse.

The trial judge did not rely on the residual hearsay exception of *W.C.L.* until the prosecutor asked Dr. Cantwell to relate the victim's statement of where the sexual penetration occurred. The trial judge overruled defense counsel's objection, and stated:

The guidelines laid down in ... *W.C.L.* have been established here by the foundation that the witness is unavailable and incompetent to testify. And this particular witness, the doctor [Cantwell], was relating the conversations. [S]he had a particular duty to inquire, and a particular expertise, and a particular cause for the inquiry; and the court will allow the question that the doctor posed to the girl where this happened, and the answer thereto.

In my view, the quoted portion is the only part of a record that reflects that the trial judge relied exclusively on the residual hearsay exception of *W.C.L.* (rather than the medical diagnosis exception of CRE 803(4)), and it typifies the confused state of the record. The victim's unavailability as a witness is relevant to the foundational requirements for the residual hearsay exception, because the statement must be "more probative on the point for which it is offered than any other evidence...." CRE 803(24)(B). The remaining factors listed by the judge—Dr. Cantwell's duty to inquire, her expertise, and the cause for the inquiry—are irrelevant to a finding of foundation for the residual hearsay exception. The trial court must find equivalent guarantees of trustworthiness for the statements of the *declarant*, not the *witness*.

The reason for the victim's testimonial incompetency and unavailability appears to preclude a finding of circumstantial guarantees of trustworthiness. The majority attempts to characterize the victim's incapacity as resulting from an inability to communicate. Majority op. at 1132–1133, 1137. The record discloses that the victim, besides being unable to communicate, was

unable to receive and assimilate accurate factual impressions. The trial court found that the victim was incapable of "receiving accurate cognitive impressions," that "she could not appreciate the nature of an oath," and that she could not "receive impressions at a mature enough level to assess them and to report them...." The finding that the victim was unable to accurately receive and assimilate cognitive impressions is diametrically opposed to the equivocal finding that there were circumstantial guarantees of trustworthiness surrounding the child's statements regarding those cognitive impressions. The foundation for the admission of the statements of the minor victim pursuant to CRE 803(24) is not clearly borne out by the record in this case.

Interests of fairness also require a remand in this case. Counsel for defendant vigorously argued that the medical diagnosis exception was inapplicable, and we vindicate that argument today. Counsel opposed the application of the judicially created residual hearsay exception of *W.C.L.*, and we upheld that argument when we reversed the court of appeals decision in *W.C.L.* The residual hearsay exception is now codified in our rules of evidence, and the defendant should have the opportunity to refute the prosecutor's showing of equivalent guarantees of trustworthiness.

The majority acknowledges that the grounds for admitting Dr. Cantwell's testimony was incorrect. In my view, the record does not affirmatively demonstrate the basis for the admission of the remaining testimony, and the trial court's finding of equivalent guarantees to trustworthiness flies in the face of the reason for the daughter's testimonial incompetency. The danger of inferring a foundation for the hearsay statements of the victim is especially apparent in this case. There was competent evidence, derived from the testimony and his treating physician, that the defendant had been treated for high blood pressure, and that the medication caused impotency and sexual dysfunction. Since the sexual crime in this case is admittedly difficult to prove and even more difficult to disprove, this court should not infer an evidentiary foundation from a contradictory record. I would reverse and remand the case for a new trial.