STATE of Utah, Plaintiff and Appellee,

v.

Daniel Lawrence WEBB, Defendant
and Appellant.

No. 20890.

Supreme Court of Utah.

July 21, 1989.

Walter F. Bugden, Jr., Salt Lake City, James L. Shumate, Cedar City, and Edward K. Brass, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Kimberly K. Hornak, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Defendant Daniel Webb appeals from a jury verdict finding him guilty of aggravated sexual abuse of a child, a first degree felony, for which he was given a minimum mandatory prison sentence of three years. *See* Utah Code Ann. § 76–5–404.1(3)(b), (4) (Supp.1984). He contends, inter alia, that the trial court erred in ruling that hearsay statements by the eighteen-month-old alleged victim, who was not present at trial, qualified for admission into evidence under section 76–5–411(1) of the Code. Utah

Code Ann. § 76–5–411(1)(b) (Supp.1988). We reverse the conviction.

The evidence presented at trial will be summarized. The alleged victim was eighteen months old at the time of the incident and is the daughter of Webb and his former wife, Cindy. Webb visited his daughter at Cindy's apartment in Ferron, Utah, on Sunday, September 30, and Monday, October 1, 1984. On Sunday, Cindy was with Webb and the child at the apartment. On Monday, Webb had sole custody of the child while Cindy worked. She returned to the apartment in the late afternoon where Webb, Cindy, and the child had dinner. Cindy then gave the child a bath. She testified that as she lowered the child into the bath water, the child said, "Ow bum." After the bath, Cindy examined the child's bottom. During that examination, the child said, "Ow bum daddy." According to Cindy, the child's anus was red and swollen and "looked kind of like it does when you have hemorrhoids [sic]."

After Webb left, Cindy took the child to the Price Pediatric Clinic, where she was examined by a Dr. Ammerman. The doctor, a pediatrician, observed an anal tear. At his direction, a photograph of the child's bottom was taken. The photograph was admitted into evidence at trial. Dr. Ammerman opined that the child had been abused.

Dr. Snelling, a pediatric resident at Primary Children's Medical Center and the University of Utah Medical Center, examined the child on Wednesday, October 3rd, two days after the visit to Dr. Ammerman. Dr. Snelling testified that her examination did not reveal a tear, a fissure, or any bruising of the anal area. She opined that the child had not been abused.

Dr. Palmer, a pediatrician at Primary Children's Medical Center and the University of Utah Medical Center who specializes in child sexual abuse, reviewed the medical records, the report of Dr. Snelling, and the photograph. He testified that "if it is an injury, if it is, it represents a fissure rather than a tear." Dr. Palmer explained that a tear "tends to be a deeper injury such as obstetrical kinds of tears associated with delivery of the baby," while a fissure is superficial "like the cracks we all get in our lips when we get them dry." He was of the opinion, however, that the photograph showed only mucous membrane and not a fissure or an injury. Dr. Palmer stated that given the amount of traction apparent in the photograph where the buttocks were pulled back to give a good picture of the anus, any fissure or tear present would have resulted in visible moisture and blood in the photograph. Yet in the photograph, no blood and little moisture is present. Dr. Palmer also testified that bruising occurs along with an anal tear and will not heal in 48–72 hours, which in this case was the time period between the child's visit to Dr. Ammerman and the examination by Dr. Snelling. Dr. Palmer was unable to find bruising in the photograph of the child's bottom.

During trial, Webb objected on grounds of hearsay and lack of foundation to the admission of testimony concerning his daughter's out-of-court statements. The trial court, after holding a hearing out of the presence of the jury, overruled the objections and permitted the testimony to be received. The court concluded that section 76–5–410 of the Code [1] made the child a competent witness and that section 76–5–411(1)(b) of the Code authorized the admission of the hearsay, despite the absence of the child at trial. Utah Code Ann. §§ 76–5–410, 411(1)(b) (Supp.1988).

The jury convicted Webb of aggravated sexual abuse of a child. He was given a minimum mandatory sentence of three years in prison. Utah Code Ann. § 76–5–404.1(3)(b) (Supp.1988). Thereafter, the trial court issued a certificate of probable cause, and Webb was released on bond pending the disposition of this appeal.

---

1. Section 76–5–410 provides as follows:
   A child victim of sexual abuse under the age of ten is a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall determine the weight and credibility of the testimony.
   Utah Code Ann. § 76–5–410 (Supp.1988).

Before this Court, Webb argues, inter alia, that the trial court erred in admitting the testimony regarding the child's out-of-court statements. Webb acknowledges that under section 76–5–411(1)(b), hearsay statements of a child who is an alleged victim of sexual abuse may be admitted into evidence. However, he contends that one of the preconditions section 76–5–411(1)(b) sets for admission was not satisfied. Specifically, he contends that the State did not show that the "child [was] not available to testify in court." *Id.* Section 76–5–411 reads in material part:

> (1) Notwithstanding any rule of evidence, a child victim's out of court statement regarding sexual abuse of that child is admissible as evidence though it does not qualify under an existing hearsay exception, if:
>
> (a) the child is available to testify in court or as provided by Subsection 77–35–15.5(2) or (3);
>
> (b) *in the event the child is not available to testify in court or as provided by Subsection 77–35–15.5(2) or (3), there is other corroborative evidence of the abuse;* or
>
> (c) the statement qualifies for admission under Subsection 77–35–15.5(1).
>
> (2) Prior to admission of any statement into evidence under this section, the judge shall determine whether the interest of justice will best be served by admission of that statement. In making this determination the judge shall consider the age and maturity of the child, the nature and duration of the abuse, the relationship of the child to the offender, and the reliability of the assertion and of the child.[2]

. . . .

> (4) For purposes of this section, a child is a person under the age of 12 years.

Utah Code Ann. § 76–5–411 (emphasis added).[3]

Admission of hearsay statements by child sexual abuse victims is relatively new to our law. Until the enactment of section 76–5–410, which effectively made it impossible to challenge the competency to testify of a child sexual abuse victim, it was almost certain that the testimony of a child as young as the victim here would not be admissible. *Cf. State v. Cooley,* 603 P.2d 800, 802–03 (Utah 1979) (admission of testimony of three-year-old witness over defendant's objection was error when court failed to examine witness to determine competency). However, in 1983, sections 76–5–410 and 76–5–411 were enacted as part of a package that made it easier to introduce children's testimony in child sexual abuse cases and that imposed harsher sentences on offenders. 1983 Utah Laws ch. 88, §§ 29, 30. In 1985, the legislature further liberalized the rules of evidence by permitting the admission of children's testimony taken out of the presence of the court and, under some circumstances, out of the presence of the defendant or defendant's counsel. 1985 Utah Laws ch. 74, § 3; *see* Utah Code Ann. § 77–35–15.5 (Supp.1985). These statutes are not unique to Utah. In substance, section 76–5–411 is derived from provisions first enacted in Washington state, and the videotaping and other out-of-the-presence-of-the-court provisions of section 77–35–15.5 follow the pattern set by statutes in many other states. *Compare* Utah Code Ann. § 76–5–411

2. The trial court found the hearsay admissible under subsection 76–5–411(1)(b). Before an out-of-court statement by an alleged child victim can be admitted under any of the subparts of 76–5–411(1), the trial court must find that "the interest of justice will best be served by admission of that statement." Utah Code Ann. § 76–5–411(2). Subsection 76–5–411(2), as interpreted by our decision in *State v. Nelson,* 725 P.2d 1353, 1355 n. 3 (Utah 1986), decided after the trial of this matter, requires that a trial court make detailed findings as to the reliability of the out-of-court statement as part of the process of deciding whether its admission will best serve the interest of justice. The trial court here did not make such findings. However, since we reverse defendant's conviction on other grounds there is no need for us to consider the section 76–5–411(2) question at this time.

3. Subsections 77–35–15.5(2) and (3), referred to in subpart (b) of 76–5–411(1), refer to procedures for taking testimony of the child victim out of the presence of the jury but in the presence of the defendant and/or counsel who is permitted to cross-examine the witness. Utah Code Ann. § 77–35–15.5(2), (3) (1988). Neither subsection is applicable in the present case.

(Supp.1983) *with* Wash.Rev.Code § 9A.44.120 (1987) (enacted 1982). *See* Note, *The Testimony of Child Victims in Sex Abuse Prosecutions: Two Legislative Innovations,* 98 Harv.L.Rev. 806, 811–16 (1985) [hereinafter Note, 98 Harv.L.Rev. 806].

■ Because these statutes have removed long-standing barriers to the admission of certain forms of hearsay evidence and, under certain circumstances, reduced a defendant's ability to challenge that evidence through the traditional methods of face-to-face confrontation and cross-examination, they raise serious constitutional questions. *See State v. Nelson,* 725 P.2d 1353, 1355 n. 3 (Utah 1986); Note, 98 Harv. L.Rev. 806. We have had relatively little occasion to address the constitutional implications of section 76–5–411 (or of the related provisions of sections 76–5–410 and 77–35–15.5). In *State v. Nelson,* we held that the admission of a child's out-of-court statements under subpart (1)(a) of section 76–5–411 does not deprive a defendant of confrontation rights because the child declarant must still be available for cross-examination, even if the defendant does not, in fact, conduct such an examination. 725 P.2d at 1357. But until today, we have not addressed subsection 76–5–411(1)(b), which provides for the admission of hearsay even when the declarant is not available for cross-examination.[4]

In the rush to facilitate the prosecution of child sexual abuse cases, we must be wary of measures that may infringe the right of confrontation, one of the core elements of the right to due process of law. *See Coy v. Iowa,* —— U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); *cf. State v. Rimmasch,* 775 P.2d 388, 390–93 (1989). In *State v. Anderson,* 612 P.2d 778 (Utah 1980), we summarized the values protected by the constitutional right of confrontation, which is preserved by both the sixth amendment to the United States Constitu-

tion and article I, section 12 of the Utah Constitution. U.S. Const. amend. VI; Utah Const. art. I, § 12:

Classically, the primary object of the constitutional right of confrontation is to prevent depositions and ex parte affidavits from being used against the accused at trial in lieu of a personal examination and cross-examination of the witness against him. When confrontation is available the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face-to-face with the jury in order that they may look at him and judge by his demeanor and the manner in which he gives his testimony whether he is worthy of belief. Encompassed in this right of confrontation is the procedural right of cross-examination and the recognition of certain procedural rights regarding the exclusion of extra judicial statements, similar to those found protected by evidentiary rules excluding hearsay evidence.

612 P.2d at 785 (footnotes omitted); *accord Murray City v. Hall,* 663 P.2d 1314, 1321 (Utah 1983); *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895).

■ There are instances in which hearsay statements may be admitted against a defendant consistent with his or her constitutional right of confrontation. *See Ohio v. Roberts,* 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). However, the simple fact that a statute or common law rule has created an exception to the general rule barring the admission of hearsay evidence does not mean that where such an exception is available, the confrontation clause has no application. As *Anderson* noted, because decisions of the United States Supreme Court have not established total congruence between the confrontation clause and the evidentiary rules concerning hearsay, it is possible that admission of

---

**4.** In his claims of error, Webb raises the question of whether his right of confrontation was infringed upon by section 76–5–411(1)(b) of the Code. As a general rule, we will not engage in a state constitutional analysis unless an argument for different analyses under the state and feder-

al constitutions is briefed. *See, e.g., State v. Tuttle,* 106 Utah Adv.Rep. 6, 7 n. 4, —— P.2d ——, —— n. 4 (April 12, 1989); *State v. Lafferty,* 749 P.2d 1239, 1247 n. 5 (Utah 1988); *State v. Earl,* 716 P.2d 803, 805–06 (Utah 1986).

certain evidence could be justified under a hearsay exception, yet still violate the defendant's constitutional right of confrontation. 612 P.2d at 785 n. 31. Similarly, the fact that evidence may be excludable as hearsay does not mean that its erroneous admission constitutes a denial of the right of confrontation. *See, e.g., California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *State v. Hackford,* 737 P.2d 200, 204–05 (Utah 1987). The critical inquiry is whether the values embodied in the confrontation clause are impinged upon by the admission of the hearsay and, if so, whether there are adequate safeguards to protect those values.

■ When an out-of-court statement is offered at trial for the truth of the matter asserted and the declarant is present and available for cross-examination, no federal or state confrontation problem is presented. *State v. Loughton,* 747 P.2d 426, 429 (Utah 1987); *State v. Nelson,* 725 P.2d at 1356. On the other hand, if the declarant is not present, the core values of the confrontation right are implicated because "[t]he essence of the confrontation right is the opportunity to have the accusing witness in court and subject to cross-examination, so that bias and credibility can be evaluated by the finder of fact." *State v. Nelson,* 725 P.2d at 1356; *see Ohio v. Roberts,* 448 U.S. at 63–64, 70, 100 S.Ct. at 2537–38, 2541. In *Ohio v. Roberts,* the Supreme Court set out general principles for determining when hearsay may be admitted without impinging unduly upon these core values protected by the federal confrontation clause, even though the witness does not testify at trial:

> In sum, [1] when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. [2] Even then, his statement is admissible only if it bears adequate "indicia of reliability." [a] Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. [b] In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

448 U.S. at 66, 100 S.Ct. at 2539 (bracketed material added).

■ In the present case, Webb contends that *Roberts* precludes the admission of Cindy's testimony about the child's out-of-court statements. He argues that because the child was not present at trial, her out-of-court statements could have been used without violating his sixth amendment rights only if the State first made a showing that the child was constitutionally "unavailable." Webb contends that this showing was not made. But even if it had been made, he asserts, before the out-of-court statements could have been admitted, the State would also have to have demonstrated that "particularized guarantees of trustworthiness" surrounded the out-of-court statements. *Id.* This is necessary because the hearsay exception spelled out in section 76–5–411 is a recent creation, not one that is "firmly rooted" in the common law. *See State v. Nelson,* 725 P.2d at 1355 n. 3 (discussing how the trial court is to assay the facts relevant to determining the existence of "particularized guarantees of trustworthiness"). Webb contends that this second showing was not made here either. *See supra* note 2. We find no need to reach the second portion of Webb's argument because we agree with the first. The State did not demonstrate that the victim was constitutionally "unavailable"; therefore, it was improper to admit the out-of-court statements.

Section 76–5–411(1)(b) of the Code requires that if the witness is "not available to testify in court," then the out-of-court statements may be admitted if there is corroborative evidence. Utah Code Ann. § 76–5–411(1)(b) (Supp.1988). However, section 76–5–411 does not define what "not available" means. In construing a statute, we endeavor to give it a meaning that will render it constitutional whenever possible. *E.g., Provo City Corp. v. Willden,* 768 P.2d 455, 458 (Utah 1989); *State v. Bishop,* 753 P.2d 439, 495 (Utah 1988) (Zimmerman, J., concurring separately, joined by Stewart and Durham, JJ.); *Greaves v. State,* 528 P.2d 805, 807 (Utah 1974). Our reading of *Roberts* and other United States Supreme

Court cases leads us to conclude that in order for a witness to be constitutionally unavailable, it must be practically impossible to produce the witness in court. It is not enough to show that the witness would be uncomfortable on the stand or that testifying would be stressful. Every reasonable effort must be made to produce the witness. *See Ohio v. Roberts,* 448 U.S. at 74–75, 100 S.Ct. at 2543–2544; *Mancusi v. Stubbs,* 408 U.S. 204, 212, 92 S.Ct. 2308, 2312, 33 L.Ed.2d 293 (1972); *Barber v. Page,* 390 U.S. 719, 725–26, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); Note, 98 Harv. L.Rev. at 818.[5] The reason for giving the precondition to the admission of hearsay such a stringent construction is that to permit the use of out-of-court statements in the absence of such a showing effectively demeans the importance of the right of face-to-face confrontation and cross-examination of the witness before the finder of fact by unduly facilitating the use of alternative forms of evidence. *See* Westen, *The Future of Confrontation,* 77 Mich.L.Rev. 1185 (1979).

Our own precedent reflects this strict view of the unavailability precondition. *See State v. White,* 671 P.2d 191, 193 (Utah 1983) (the fact that declarant's attorney had told defendant's attorney that declarant would assert the fifth amendment privilege did not render declarant unavailable as a witness, as declarant must claim the privilege personally); *State v. Chapman,* 655 P.2d 1119, 1122 (Utah 1982) (out-of-state witness was not "unavailable" where prosecutor made no effort to secure his attendance by use of Uniform Act To Secure Attendance of Witnesses from Without a State in Criminal Proceedings because he knew witness would be unwilling to testify); *State v. Case,* 752 P.2d 356, 358 (Utah Ct.App.1987) (out-of-state declarant was not "unavailable" within meaning of a hearsay exception where prosecutor made no effort to secure her attendance by use of Uniform Act To Secure Attendance of Witnesses from Without a State in Criminal Proceedings). A similar approach has been taken by the Washington Supreme Court in *State v. Ryan,* 103 Wash.2d 165, 691 P.2d 197 (1984), which held that absent a showing of a good faith effort to produce the witness, the state cannot establish unavailability.

In the present case, the judge did not interview the child or take any expert testimony regarding the capability of the child, then two years old, to testify in court, nor did the judge make any specific finding that she was physically or psychologically unavailable.[6] Instead, after conferring with the mother, Cindy, the State's chief witness, the court simply ruled that the out-of-court statements were admissible, stating, "[N]aturally a child of this age— there's no way they [sic] can testify or be cross-examined, or whether we know they're reacting to suggestion or something they've heard." The State contends that this is a finding of unavailability due to immaturity. If that is the meaning to be drawn from this statement, we conclude that it is not a finding sufficient to warrant admitting the hearsay under section 76–5–411(1)(b) of the Code, if that provision is interpreted to conform to the requirements

---

5. In *California v. Green,* Mr. Justice Harlan said:

> What I would hold binding on the States as a matter of due process is what I also deem the correct meaning of the Sixth Amendment's Confrontation Clause—that a State may not in a criminal case use hearsay when the declarant is available.

*California v. Green,* 399 U.S. 149, 186–87, 90 S.Ct. 1930, 1949–50, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring). For an excellent discussion of how a due process analysis should be applied to confrontation clause issues surrounding admission of hearsay evidence, as suggested by Justice Harlan, see Westen, *The Future of Confrontation,* 77 Mich.L.Rev. 1185 (1979).

6. We have no occasion today to address the circumstances under which a witness, although physically available, might be determined to be psychologically unavailable. However, if the result of such a finding was that out-of-court statements would be admitted into evidence without any opportunity for the exercise of the traditional core elements of the confrontation right discussed in *State v. Anderson,* 612 P.2d at 785, as is the case here, then it appears likely that the psychological state of the declarant would have to be such as to render him or her just as "unavailable" as one who is physically absent.

**1114**

of the federal confrontation clause. It is not enough to make some general assumptions about all children of this age; the trial court must determine whether this particular child is constitutionally unavailable.[7]

Having determined that the trial court was in error in admitting the child's hearsay statements without first properly determining whether she was unavailable to testify in court, the next question is the effect of that error. I would determine whether the error was prejudicial to defendant and, if so, vacate the conviction and remand for a new trial.[8] A majority of the Court, however, has joined Justice Stewart's separate opinion, in which he concludes that even if the child's out-of-court statements could be found admissible under section 76–5–411 on remand, those statements, considered together with all the other evidence introduced at trial, would still be insufficient evidence to sustain a conviction under section 76–5–404.-

1(3). Therefore, for the reasons set forth in Justice Stewart's separate opinion, the conviction is reversed and defendant's discharge ordered. I do not join in that disposition of the case.

STEWART, Justice (separate opinion):

This decision of the Court is published in an unorthodox manner. This is the opinion of the Court, although the facts are stated in Justice Zimmerman's opinion, which is the lead opinion, but not the opinion of the Court.

Defendant was convicted of aggravated sexual abuse of a one-and-a-half-year-old child pursuant to Utah Code Ann. § 76–5–404.1 (Supp.1989). That section provides:

> (1) A person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses,

---

7. The State relies upon *State v. Bounds,* 71 Or. App. 744, 694 P.2d 566 (1985). There, the court held that a child is "unavailable" for the purposes of a statutory hearsay exception when he or she is "incompetent" to testify because of her age. We are not persuaded. The parties in *Bounds* stipulated that the child victim was too young to testify. In the present case, the parties have entered no such stipulation. Moreover, section 76–5–410 of the Code makes all victims of child abuse competent witnessess without regard to age. Utah Code Ann. § 76–5–410. In light of that fact, it is hard to understand how the trial court could find all children of the age of the alleged victim incompetent to testify and, for that reason, unavailable.

A more apt handling of the issue is demonstrated by the Washington Supreme Court's decision in *State v. Ryan,* 103 Wash.2d 165, 691 P.2d 197 (1984). There, the court was presented with facts nearly identical to those in *Bounds.* The trial court had determined that the child witnesses were unavailable because all parties had stipulated that the witnesses were statutorily incompetent. However, the Washington court held that equating incompetence by reason of the child's age with unavailability of the witness is faulty reasoning. The court said:

> First, incompetency and unavailability serve separate purposes, and mean different things. Second, ... a resolution that a witness is incompetent precludes most hearsay statements of that witness whether available or not.

*State v. Ryan,* 103 Wash.2d at 171, 691 P.2d at 202.

8. My analysis would proceed as follows: Under rule 30 of the Utah Rules of Criminal Procedure, an error warrants reversal only if the substantial rights of a party are affected. Utah R.Crim.P. 30 (codified at Utah Code Ann. § 77–35–30 (1982)). This occurs when there is a reasonable likelihood that if the error had not occurred, the defendant would have obtained a more favorable result. This "reasonable likelihood" standard is met if our confidence in the outcome of the case is undermined. *State v. Rimmasch,* 775 P.2d 388, 406 (Utah 1989); *State v. Tuttle,* 106 Utah Adv.Rep. 6, 12 n. 12, — P.2d —, — n. 12 (April 12, 1989); *State v. Verde,* 770 P.2d 116, 122 (Utah 1989); *State v. Bell,* 770 P.2d 100, 106 (Utah 1988); *State v. Hackford,* 737 P.2d 200, 204 n. 1 (Utah 1987); *State v. Knight,* 734 P.2d 913, 919–20 (Utah 1987).

I would conclude that in the absence of the improperly admitted hearsay, a reasonable probability exists that Webb would have obtained a more favorable result. Other than the inference that can be drawn from the fact that the physical signs of abuse were seen immediately after Webb had custody of the child, the child's statement was the only direct evidence that could be claimed to link Webb to the alleged abuse. In view of the serious conflict in the medical evidence as to whether the child had been abused, the child's testimony was certainly important to proving both abuse and the identity of the perpetrator. Admission of the child's statements was highly prejudicial to Webb. I would find that he is entitled to a new trial. I do not join in Justice Stewart's opinion precluding a retrial.

the actor touches the anus, buttocks, or genitalia of any child ... *with intent to cause subtantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.*

(Emphasis added.)

■ Justice Zimmerman would reverse and remand for a new trial on the ground that the trial court failed to determine whether the child victim declarant was "unavailable" for cross-examination at trial pursuant to Utah Code Ann. § 76–5–411 (Supp.1989). However, it is the view of the Court that there is no point in remanding this case to the trial court to determine whether the child declarant is unavailable, since a remand assumes that defendant can be convicted of the crime charged on the basis of a one-and-a-half-year-old's exclamations, "Ow bum," or "Ow bum daddy." That evidence is not sufficient as a matter of law to support a conviction.

It is beyond credulity that the law could allow a conviction to stand on such evidence. The child declarant was, at the time she made the declaration, approximately one-and-a-half years old. She could not speak in sentences, and she could not carry on a coherent conversation. The child spoke primarily with nouns, and she could sometimes group a few nouns together. Because of the lack of cognitive development due to her age, she simply was unable to perceive, recall, and communicate with any degree of meaning or clarity. The meaning of her exclamations was utterly obscure. The statement "Ow bum" while being lowered into bath water and her later statement, "Ow bum daddy," do not constitute an accusation against defendant of the elements of the crime of child abuse. The child's outcry could have been to elicit help from her daddy, or it could have had several other meanings.

It is obvious that the child could not possibly be cross-examined in an effective manner so as to elaborate the intended meaning. The trial court clearly recognized the point. It found that "naturally a child of this age—there is no way they can testify or be cross-examined, or [that] we [can] know [whether] they're reacting to suggestion or something they've heard." That court, having heard much testimony about the child from the child's mother, was obviously correct in that observation.

Since the child cannot be cross-examined on that statement or anything else related to the alleged crime, the conviction stands almost entirely on one out-of-court declaration of the child, but even that declaration does not assert an act of abuse. Justice Zimmerman also recognizes this point: "Other than the inference that can be drawn from the fact that the physical signs of abuse were seen immediately after Webb had custody of the child, the child's statement was the only direct evidence that could be claimed to link Webb to the alleged abuse. In view of the serious conflict in the medical evidence as to whether the child had been abused, the child's testimony was certainly important to proving both abuse and the identity of the perpetrator."

Furthermore, there is absolutely no evidence whatsoever, even assuming that defendant touched the baby's buttocks or anus in some fashion, that shows defendant did the act with an "intent to arouse or gratify" his sexual desire, an element of the crime that must be proved under Utah Code Ann. § 76–5–404.1. He may simply have irritated an already chapped area in giving the child hygienic care.

■ The law is that a single uncorroborated hearsay statement is not substantial evidence and not sufficient to support a verdict. *United States v. Orrico,* 599 F.2d 113, 118 (6th Cir.1979). *See also Brower v. State,* 728 P.2d 645, 647–48 (Alaska Ct.App. 1986); *State v. Moore,* 485 So.2d 1279, 1281 (Fla.1986). Since defendant has been tried and since the evidence is wholly insufficient as a matter of law to support a conviction, it follows that the information must be dismissed and the defendant discharged. Double jeopardy bars the retrial of a defendant when an appellate court declares the evidence to be insufficient to sustain a conviction. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978);

*Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). *See also State v. Bolsinger,* 699 P.2d 1214, 1221 (Stewart, J., concurring and dissenting).

For that reason, the conviction should be reversed and the case remanded for dismissal of the charges.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur in the separate opinion of STEWART, J.