**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph Michael SMITH, Defendant and Appellant.**

**No. 900087–CA.**

Court of Appeals of Utah.

May 30, 1991.

---

Craig S. Cook (argued), Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Charlene Barlow (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before GREENWOOD, JACKSON and RUSSON, JJ.

GREENWOOD, Judge:

Appellant Joseph Michael Smith appeals the trial court's denial of his motion to withdraw his plea of no contest to the charge of attempted sexual abuse of a child, Utah Code Ann. §§ 76–4–101 and 76–5–404.1(2) (1990), a third degree felony. We affirm the trial court's decision.

## BACKGROUND

Appellant was originally charged with aggravated sexual abuse of a child, a first degree felony, Utah Code Ann. § 76–5–404.1(3) and (4) (1990). Pursuant to a plea agreement with the State, appellant entered his plea of no contest to the charge of attempted sexual abuse in July 1987. Because the Utah Supreme Court issued *State v. Gibbons*, 740 P.2d 1309 (Utah 1987), on June 30, 1987, appellant's plea fell within the *Gibbons* rule that guilty or no contest pleas must be entered in strict compliance with Rule 11, Utah Rules of Criminal Procedure.[1]

At the July 1987 plea hearing, appellant's counsel indicated that appellant was "unwilling to admit any culpability in connection with this offense at all," but was nevertheless willing to enter a no contest plea and to undergo sex offender rehabilitation treatment in lieu of incarceration. An affidavit was then submitted by appellant, indicating, among other Rule 11 requirements, that appellant understood the operation of his plea as a waiver of specific constitutional rights, and that the plea was voluntarily offered. The affidavit described the pleaded offense, stating that appellant had "[a]ttempted to touch the genitals of a child under the age of 14 w/intent to cause sexual gratification or pain."

The trial court explained to appellant that it considered the no contest plea to be equivalent to a guilty plea. Then, reviewing the affidavit, the court questioned appellant about his understanding of the pleaded offense, the State's trial burden of proving all elements of the offense beyond a reasonable doubt, the fact that by his plea he was giving up his constitutional trial rights, the possible penalties for the pleaded offense, and other matters.

Turning to the evidence of the charged offense, the trial court asked appellant if he had reviewed the evidence with counsel and if, upon such review, both he and counsel had concluded that the evidence could result in conviction after a jury trial. Appellant answered affirmatively. Appellant also confirmed the affidavit statement that no promises or threats had been made to secure his plea.

The State repeated the elements of the original sexual abuse charge and summarized the evidence that it believed would prove the elements of that offense beyond a reasonable doubt:

[I]f the State were to try this case, it's our position that we would have no difficulty proving the elements of the case, and specifically on or about September 24th of last year, 1986, that the defendant touched the genitals of ... a female child of 2½ years of age, that he did so with the intent to either arouse or gratify his or her sexual desires or to inflict physical or emotional pain to this child or to himself.

It would be our understanding, Your Honor, as I indicated, that were we to try this case these facts would come out through the testimony of expert witnesses as well as the testimony of the child and in the form of video tape.

The colloquy between appellant and the trial court regarding the no contest plea also focused on appellant's desire to accept sex abuse treatment in lieu of incarceration. The trial court cautioned appellant that any agreement by the State to recommend treatment was not binding upon the court, and specifically addressed the likelihood that appellant's failure to admit the offense could bar his acceptance into treatment:

THE DEFENDANT: I was under the understanding that there would be no incarceration.

THE COURT: That's going to be a recommendation from the State. That may be a recommendation from the State; is that correct?

THE DEFENDANT: Yes, your honor.

THE COURT: Do you understand, as stated previously, that that is not binding upon me?

---

**1.** Formerly Utah Code Ann. § 77–35–11 (Supp. 1988). Because the Rule 11 provisions at issue here are identical to those under the former statute, under which appellant's plea was taken, our Rule 11 references herein are to the current rule.

THE DEFENDANT: Yes, your honor.

THE COURT: Do you understand what [the deputy county attorney] said also, and that is, that some of these programs or a specific program may not take you if you persist in claiming factually that you did not do what you're charged with? Do you understand that?

THE DEFENDANT: Yes, your honor.

THE COURT: And I take it you also understand that part of the basis of [the deputy county attorney] saying that she's going to recommend something other than incarceration is that you are in such a program.

THE DEFENDANT: Yes, your honor.

The court signed appellant's affidavit, announced its finding that appellant's no contest plea was knowingly and voluntarily offered, and accepted the plea.

Following the plea hearing, a ninety-day evaluation period ensued. A sentencing hearing was subsequently held in December 1987. The trial court expressed its ongoing concern with appellant's failure to admit guilt. An Adult Probation and Parole (AP & P) officer, speaking on behalf of the Bonneville sex abuser treatment facility, stated that appellant's ninety-day evaluation report indicated that some progress had been made by appellant toward admitting his offense. The AP & P officer indicated that the Bonneville program would accept appellant, with the understanding that he would be brought back into court if denial of his offense interfered with his treatment. The trial court then warned appellant that his probation, if granted, would depend upon satisfactory progress in the Bonneville program, as determined by the treatment staff there:

THE COURT: Mr. Smith, do you understand that if probation is granted, that one of the conditions of probation is that you enter and complete Bonneville, that if Bonneville, based on good, sound judgment, decides that you are not sufficiently advancing in that program, is that that will be deemed a violation of the condition of probation, which means your probation will be revoked and the remainder

of your time will be served in the State Penitentiary?

THE DEFENDANT: Yes, your honor.

The alleged victim's mother also attended the sentencing hearing, and the trial court sought her approval of treatment instead of incarceration: "It's my view that the public is better served if he is referred to Bonneville to see if he can successfully complete that program. If he cannot, he will go to the State Penitentiary, and that's up to Bonneville's good judgment." The victim's mother agreed. The court repeated to appellant that it would rely on the Bonneville staff to set conditions for keeping appellant in treatment, subject only to the limit that those conditions not be "arbitrary or capricious." The court then imposed a sentence of zero to five years in the Utah State Prison, staying that sentence, and placing appellant on probation, provided appellant successfully participate in the Bonneville program as well as meet other conditions.

Two months later, in February 1988, appellant was back before the trial court on an order to show cause why his probation should not be revoked. The State contended appellant had failed to recall the facts of his offense, a key requirement for treatment under the Bonneville program. The probation revocation proceeding was continued pending a psychological evaluation of appellant and appellant's effort to find another treatment facility. Appellant's alternative facility rejected him because he did not admit his offense, and the psychological evaluation was apparently also unfavorable. In March 1988, appellant's probation was revoked, and he was sent to the Utah State Prison.

In September 1989, appellant, still incarcerated following two refusals by the board of pardons to grant parole, moved to withdraw his no contest plea. In December 1989, the trial court denied the motion, and this appeal followed.

## ISSUES

Appellant argues that his motion to withdraw his no contest plea was erroneously denied because the affidavit he submitted

and the hearing conducted by the court in connection with the plea were legally deficient.

He alleges two deficiencies under Utah R.Crim.P. 11 that mandate the withdrawal of his plea. First, that there was an inadequate factual synopsis of the acts making up the elements of the crime; and second, that his plea bargain agreement inadequately detailed what was expected of him under the plea.

The State first responds that appellant's motion to withdraw his plea was untimely; assuming the motion was timely, the State argues that it was properly denied.

## NO CONTEST PLEA

At the sentencing hearing, the trial court commented that appellant's no contest plea would be "the first and last no contest plea for a charge like this that I received or will receive, which inherent in that is a lack of admission of guilt." A no contest, or "nolo contendere" plea has been recognized as a troublesome legal creature. *See* Fed.R. Crim.P. 11(b) advisory committee's note to 1974 amendment, and sources cited therein. The history of this case confirms that "[t]he defendant who asserts his innocence while pleading guilty or nolo contendere is often difficult to deal with in a correctional setting.…" Fed.R.Crim.P. 11(f) advisory committee's note to 1974 amendment. While electing not to contest the State's case against him, appellant's failure to admit guilt also prevented rehabilitative efforts and ultimately resulted in his incarceration.

In Utah, a plea of no contest can only be made with the consent of court. Utah R.Crim.P. 11(3). Exercise of the trial court's broad discretion to refuse a no contest plea and insist upon an admission or trial determination of guilt is clearly appropriate as a method of preventing the type of problem presented here. However, by explicitly informing appellant that his plea of no contest would be treated like a plea of guilty, and by further informing him that failure to admit his guilt could result in incarceration, the trial court avoided problems related to any inherent distinction between a guilty and a no contest plea. Like the trial court, the parties to this case have treated appellant's plea as equivalent to a guilty plea, and we will do likewise.

## TIMELINESS OF MOTION TO WITHDRAW PLEA

█  At the time appellant entered his no contest plea, our statute governing the withdrawal of a plea read: "A plea of guilty may be withdrawn at any time prior to conviction. A plea of guilty or no contest may be withdrawn only upon good cause shown and with leave of court." Utah Code Ann. § 77–13–6 (1982). This statute was construed as providing a limitless period in which to move to withdraw a plea. *State v. Gibbons*, 740 P.2d 1309, 1311 (Utah 1987). Effective April 1989— roughly twenty months after appellant entered his plea—the statute was amended, adding a timeliness requirement: "A request to withdraw a plea of guilty or no contest is made by motion, and shall be made within 30 days after the entry of the plea." Utah Code Ann. § 77–13–6(2)(b) (1990).

The State argues that the time limitation amendment to section 77–13–6 applies retroactively to appellant's motion to withdraw his plea. Utah Code Ann. § 68–3–3 (1986) provides, "No part of these revised statutes is retroactive, unless expressly so declared," and amended section 77–13–6 does not declare itself retroactive. The State, however, characterizes section 77–13–6 as a procedural statute, rather than a substantive one, so that the general statutory non-retroactivity rule does not apply. *See State v. Norton*, 675 P.2d 577, 585 (Utah 1983), *overruled on other grounds State v. Hansen*, 734 P.2d 421, 427 (Utah 1986); *State Dep't of Social Services v. Higgs*, 656 P.2d 998, 1000 (Utah 1982). The State thus concludes that because appellant did not move to withdraw his plea within thirty days of its entry, nor within thirty days of the date amended section 77–13–6 became effective, his motion was untimely.

We do not reach the issue of whether amended section 77–13–6 applies retroac-

tively, because even if it does so apply, the State's untimeliness argument was not raised in the trial court, and was therefore not preserved for appeal. *Gibbons,* 740 P.2d at 1311. Furthermore, Rule 11(5)(g), Utah Rules of Criminal Procedure, which became effective simultaneously with amended section 77–13–6, requires that a defendant entering a plea of guilty or no contest be advised of the time limit for withdrawing the plea. Utah R.Crim.P. 11(6), also with the same effective date, allows trial courts to consider untimely motions to withdraw pleas if Rule 11(5)(g) is not met: "Failure to advise the defendant of the time limits for filing any motion to withdraw a plea of guilty or no contest is not a ground for setting the plea aside, but may be the ground for extending the time to make a motion under Section 77–13–6."

If amended section 77–13–6 applies retroactively, Rules 11(5)(g) and 11(6), clearly intended to complement it, must also apply retroactively. Therefore, appellant had the right to argue for an extension of the time to withdraw his no contest plea on the ground that he had not been provided with individual notice of the time limitation, as required by Rule 11(5)(g). It would have been up to the trial court to decide whether to allow such extension.

■ Because the State did not raise the untimeliness question in the trial court, appellant had no occasion to respond to it, and the trial court did not rule, as provided by Rule 11(6), on whether his motion to withdraw his plea could nevertheless be heard. Therefore, even if the time requirement of amended section 77–13–6 has retroactive application to appellant's motion, the State failed to preserve appellant's breach of that requirement as an issue to consider on appeal. Furthermore, we are not persuaded by the State's argument that the amended statute raises a jurisdictional question that can be addressed for the first time on appeal. Therefore, we decline to consider the State's untimeliness argument now. Instead, we proceed to the question of whether, as required by both the old and amended versions of Utah Code Ann.

§ 77–13–6, appellant demonstrated good cause to withdraw his no contest plea.

## WITHDRAWAL OF NO CONTEST PLEA

■ The determination of whether good cause exists to withdraw a criminal plea traditionally rests within the discretion of the trial court. *State ex rel. Hill,* 621 P.2d 705, 706 (Utah 1980); *State v. Lee Lim,* 79 Utah 68, 7 P.2d 825, 833 (1932). However, a trial court errs when it refuses to allow the withdrawal of a guilty or no contest plea that was not entered in strict compliance with Rule 11(5) and (7) (formerly Rule 11(e)), Utah Rules of Criminal Procedure. *State v. Gibbons,* 740 P.2d 1309, 1312–14 (Utah 1987). *See State v. Pharris,* 798 P.2d 772 (Utah Ct.App.1990) (history of Rule 11 case law). The purpose of Rule 11(5) and (7) is to assure that a plea of guilty or no contest is knowing and voluntary. *Gibbons,* 740 P.2d at 1314.

■ The operation of Utah Code Ann. § 77–13–6 (1990) along with the foregoing *Gibbons*-based case law, leads to the conclusion that a trial court's failure to strictly comply with Rule 11 in accepting a guilty or no contest plea constitutes good cause, as a matter of law, for the withdrawal of that plea. *See State v. Vasilacopulos,* 756 P.2d 92, 95 (Utah Ct.App.1988). Appellant's situation falls within this rule, because his plea was entered following the *Gibbons* decision. *Id.* at 94. Therefore, we examine appellant's plea for strict Rule 11 compliance.

### POST-*GIBBONS* RULE 11 ANALYSIS

■ We pause to clarify our approach to Rule 11–based attacks on guilty or no contest pleas. Appellant identifies the claimed Rule 11 deficiencies separately in terms of whether they appear in his affidavit or in his colloquy with the trial court regarding his plea. We will not review the affidavit and the plea colloquy inquiry in such isolation here, because the trial court carefully reviewed appellant's plea affidavit with appellant during the plea colloquy, and then incorporated the affidavit into the record of the plea hearing. Under such

circumstances, we examine the affidavit and colloquy together to determine whether a plea of guilty or no contest has been entered in strict compliance with Rule 11.

■ This approach is not inconsistent with the rejection of the "record as a whole" approach to Rule 11 in *Gibbons.* Under *Gibbons,* a plea affidavit remains an efficiency-promoting starting point for strict Rule 11 compliance. *Gibbons,* 740 P.2d at 1313. A Rule 11 deficiency in the affidavit will not, however, render the plea invalid where incomplete or missing information in the affidavit is supplied in the plea colloquy when the defendant enters the plea.

■ It is critical, however, that strict Rule 11 compliance be demonstrated on the record at the time the guilty or no contest plea is entered. *Gibbons,* 740 P.2d at 1313 (citing *McCarthy v. United States,* 394 U.S. 459, 470, 89 S.Ct. 1166, 1172, 22 L.Ed.2d 418 (1969)). Therefore, if an affidavit is used to aid Rule 11 compliance, it must be addressed during the plea hearing. *Id.* at 1314. The trial court must conduct an inquiry to establish that the defendant understands the affidavit and voluntarily signed it. The inquiry cannot stop there, however. *State v. Valencia,* 776 P.2d 1332 (Utah Ct.App.1989) (per curiam) (incomplete affidavit coupled with inquiry only into understanding and voluntariness fails to meet *Gibbons* Rule 11 requirements). Any omissions or ambiguities in the affidavit must be clarified during the plea hearing, as must any uncertainties raised in the course of the plea colloquy. Then the affidavit itself, signed by the required parties, *Gibbons,* 740 P.2d at 1313, can be incorporated into the record. The efficiency-promoting function of the affidavit is thereby served, in that the court need not repeat, verbatim, Rule 11 inquiries that are clearly posed and answered in the affidavit, unless Rule 11 by its terms specifically requires such repetition.[2]

The foregoing procedure creates a plea record, consisting of the plea colloquy complemented by a contemporaneously received affidavit, that we examine for strict compliance with Rule 11 in accepting a guilty or no contest plea. Cases applying *Gibbons* have implicitly used this approach. *E.g., State v. Smith,* 777 P.2d 464, 465, 466 (Utah 1989); *Valencia,* 776 P.2d 1332. Indeed, in *Gibbons* itself, the supreme court held a guilty plea invalid upon finding that neither defendant's affidavit nor his colloquy with the trial court adequately explained the elements of the pleaded crimes. In this case, the trial court properly utilized both the plea affidavit and the plea colloquy to comply with Rule 11. Accordingly, our analysis will not be based on either the affidavit or the colloquy in isolation, but on whether, taken together, the affidavit and colloquy demonstrate strict Rule 11 compliance.

### SYNOPSIS OF CRIME ELEMENTS

#### Rule 11 Synopsis

■ Appellant first contends that there was no adequate synopsis of the facts constituting the elements of the crime to which he pleaded no contest. Such a synopsis is required under *Gibbons,* 740 P.2d at 1313, and the Rule 11 requirement that the defendant "understands the nature and elements of the offense to which he is entering the plea...." Utah R.Crim.P. 11(5)(d). Here, appellant's plea affidavit recited the elements of attempted sexual abuse of a child as, "attempted to touch the genitals of a child under the age of 14 w/intent to

---

2. *E.g.,* Rule 11(7)(b) (court "shall advise the defendant personally" as to non-binding nature of plea agreement); Rule 11(8) (if court rejects plea agreement, "shall advise" the defendant).

This approach may appear to be inconsistent with the statements in *State v. Pharris,* 798 P.2d 772, 777 (Utah Ct.App.1990), *cert. denied,* 804 P.2d 1232 (Utah 1990), that inclusion of certain Rule 11 information in an affidavit alone is insufficient to ensure protection of a defendant's rights. Strict Rule 11 compliance under

*Gibbons* requires careful review of a plea affidavit during the plea colloquy, as occurred here. However, we do not believe that such review necessarily entails a verbatim restatement of *every* Rule 11 element from the bench. Such a requirement would defeat the efficiency-promoting function of the affidavit that *Gibbons* acknowledges and tend to encourage post-conviction attacks on guilty pleas which *Gibbons* seeks to discourage. 740 P.2d at 1314.

cause sexual gratification or pain." This is an accurate and succinct statement. *See* Utah Code Ann. § 76–5–404.1 (1990) (statutory definition of sexual abuse of a child). Upon inquiry by the trial court during the plea hearing, appellant stated that he understood those elements as described in the affidavit. The State then repeated those elements, adding specifics as to the date and the victim of the crime. Thus the affidavit and the plea colloquy amply informed appellant of the alleged acts constituting the offense, and the Rule 11 synopsis requirement was therefore met.

### Evidentiary Basis for Guilt

■■■■■■ Appellant's fact synopsis argument also contains an argument that the trial court erred by failing to determine whether the State's evidence could prove the elements of the charged crime. Therefore, he argues, his plea of no contest should not have been accepted by the trial court. However, neither Utah R.Crim.P. 11 nor *Gibbons* requires an independent determination of likely guilt. To the extent such a determination is otherwise required, that requirement was satisfied here.

Rule 11 of the Federal Rules of Criminal Procedure bars entry of judgment on a guilty plea without a determination that there is a factual basis for the plea: "Not-withstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R.Crim.P. 11(f). However, this requirement is not found in the Utah Rules of Criminal Procedure.[3] Accordingly, the trial court's inquiry into the evidence of appellant's offense was a matter within the court's discretion.

■■■ As already noted, the overriding purpose of Utah R.Crim.P. 11(5) and (7) is to ensure that a guilty or no contest plea is knowingly and voluntarily entered. In addition to providing the Rule 11 synopsis of the acts constituting the offense, it is sound practice for a trial court, in accepting a guilty or no contest plea, to conduct a limited inquiry into the evidence proving those acts. However, such inquiry need go no further than is necessary to assure, as a matter of due process, that the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).[4]

Here, the trial court's plea colloquy with appellant was sufficient to ascertain that his no contest plea was knowing and voluntary with respect to the evidence.[5] The

---

**3.** Fed.R.Crim.P. 11(f) was added to the Federal Rules of Criminal Procedure in 1966. The rule was intended to apply to guilty pleas, but not to no contest or nolo contendere pleas: "For a variety of reasons it is desirable in some cases to permit entry of judgment upon a plea of nolo contendere without inquiry into the factual basis for the plea. The new third sentence [now Rule 11(f) ] is not, therefore, made applicable to pleas of nolo contendere." Fed.R.Crim.P. 11 advisory committee's note to 1966 amendment. Thus to whatever extent a "factual basis" inquiry might be read into Utah's Rule 11, support for such a reading in this case is weakened by the nonapplicability of such inquiry to no contest pleas under the federal rule.

Our rules of criminal procedure, first enacted in 1980, are modeled after the federal rules. They are not, however, identical to the federal rules. We presume that the drafters of the Utah rules purposefully omitted the "factual basis" requirement of Fed.R.Crim.P. 11(f) from our rules. This omission appears to reflect a determination to limit independent fact finding connected with a guilty plea, because a waiver of

such fact finding is implicit in the trial right waiver effected by such a plea.

**4.** In *Alford*, defendant pleaded guilty to second degree murder although he denied committing the killing in question. The "voluntary and intelligent" nature of the plea in *Alford* was highlighted by the fact that the evidence against defendant was "strong." 400 U.S. at 29, 37, 91 S.Ct. at 163, 167. We do not read *Alford*, however, as defining any particular minimum level of independent proof of guilt that must be met in order to accept a no contest or guilty plea.

**5.** We note a possible distinction between the *Alford* language requiring that a plea represent a "voluntary and *intelligent*" choice, and that applied by Utah's courts, "voluntary and *knowing*." We treat the standards as equivalent, and believe that the "voluntary and knowing" language is preferable. This language removes any suggestion that a court must find defendant's plea to be the best, or most "intelligent" choice. Instead, the decision need only be made with knowledge of possible alternatives.

court specifically asked appellant if he and his counsel had reviewed the evidence against him. Responding affirmatively, appellant stated that he and counsel had determined that the evidence could, if presented at trial, result in a verdict of guilty. Appellant's own assessment, aided by counsel, of the risk of trial conviction posed by the evidence, was sufficient to demonstrate that his plea decision was a voluntary and knowing choice among alternatives. Indeed, by inquiring into appellant's own assessment of the evidence, the trial court properly avoided pressuring appellant to plead one way or the other, helping to assure that his plea was voluntary.[6]

Our supreme court has stated that a trial court has a duty to refuse a guilty plea to a crime which defendant has not committed. *State v. Forsyth*, 560 P.2d 337, 339 (Utah 1977). However, "[i]n performing that duty, the court is not bound to any rigidity of rule or procedure, but may do it in any manner consistent with reason and fairness which he thinks will best accomplish that purpose." *Id.* In *Forsyth*, the trial court heard the prosecution's evidence summary and the response to that evidence from defendant's counsel at the time the guilty plea in question was received. The supreme court held that this procedure satisfied the trial court's duty. *Id.* The same procedure was followed here, likewise fulfilling the trial court's limited duty to assure that there was some evidence of guilt.

■ Even where independent inquiry into the evidence supporting a plea is required by rule, the trial court itself need not be convinced of guilt. Instead, it need only determine that there is enough evidence from which a jury could find defendant guilty. *State v. Rhode*, 56 Wash.App.

69, 782 P.2d 567, 569 (1989) (applying state rule identical to Fed.R.Crim.P. 11(f)). Appellant claims this standard was not met here. Citing *State v. Rimmasch*, 775 P.2d 388 (Utah 1989) and *State v. Webb*, 779 P.2d 1108 (Utah 1989), he argues that the State's proffered expert and victim testimony could not have supported a verdict that he was guilty of sexual abuse of a child. We are inclined to disagree with appellant's characterization of the evidence in his case. More important, however, the lack of a trial prevents complete scrutiny of the evidence, because the evidence was not fully developed.

■ *Rimmasch* and *Webb* reversed convictions that followed full development of the evidence at trial. On appeal, the supreme court in effect found that the State had failed to develop sufficient admissible evidence to support the convictions. Here there was no trial, so the State did not fully develop its evidence. Indeed, inherent in appellant's plea, as explicitly stated in both his affidavit and his colloquy with the trial court, was an agreement that the State would not be put to its proof at trial. Having thus relieved the State of its burden of proof, appellant's after-the-fact speculation that the State could not have carried that burden does not create good cause as a matter of law to withdraw his no contest plea.

In sum, the fact synopsis in appellant's plea affidavit, repeated during the course of his plea colloquy, fully complied with Utah R.Crim.P. 11. The trial court also conducted a sufficient inquiry into the evidence to determine that appellant's plea was knowing and voluntary. Therefore, there was neither error of law nor an abuse of discretion in the trial court's refusal to

---

6. *See State v. Kay*, 717 P.2d 1294, 1299, 1301 (Utah 1986) (trial court involvement in plea negotiations creates risk that plea will be involuntary). One benefit of appellant's plea bargain was that he avoided the risk of being convicted of aggravated sexual abuse of a child and the mandatory three, six, or nine year state prison sentence that results. Utah Code Ann. § 76–5–404.1(4) (1990). Conviction for non-aggravated child sexual abuse, another trial possibility, carries the second degree felony penalty of one to fifteen years. Utah Code Ann. §§ 76–

5–404.1(2), 76–3–203(2) (1990). Had the trial court independently scrutinized the evidence and reached the conclusion now urged by appellant as to its sufficiency, it might have refused any plea other than not guilty, forcing appellant to risk a substantially higher penalty than the zero to five years under the proposed no contest plea. Although Rule 11 allows a trial court to refuse a guilty or no contest plea, it was quite proper for the trial court to leave the decision to avoid the risk of trial conviction in the hands of appellant and his counsel.

allow the withdrawal of appellant's no contest plea under appellant's fact synopsis and evidence inquiry arguments.

## CLARITY OF PLEA AGREEMENT

■ Appellant next argues that his plea failed to comply with Rule 11(5)(f) because he was not clearly informed of what was expected of him under his plea agreement. Specifically, appellant claims that he was not informed that he would have to consciously recall the acts constituting his offense in order to achieve the benefit of the State's agreement to recommend probation and sex abuse treatment instead of incarceration. We are not persuaded.

During the plea colloquy, when appellant expressed his "understanding that there would be no incarceration," the trial court specifically corrected him by explaining, as also stated in appellant's affidavit, that the State's recommendation of no incarceration would not be binding on the court. The court further clarified, and confirmed appellant's understanding, that the option of a treatment program instead of incarceration might not be available if appellant were to persist in claiming that he did not commit the offense.

Here, the critical Rule 11 requirement was that "the court shall advise the defendant personally that any recommendation as to sentence is not binding on the court." Utah R.Crim.P. 11(7)(b); *Gibbons*, 740 P.2d at 1313 & n. 5. This requirement was clearly met here, where the court specifically clarified that the State could only recommend, but not guarantee, that appellant not be incarcerated. Appellant's plea agreement was therefore valid under Rule 11, in that he was clearly informed that in exchange for his no contest plea, he was receiving nothing more than the State's agreement to *recommend* a disposition other than incarceration.

Appellant's actual grievance here concerns his sentence and probation agreement, rather than his plea agreement. Accordingly, we examine the terms of his sentence and probation. We note, however, that as early as his plea hearing, defendant was put on notice that in order to receive treatment instead of imprisonment, he would have to admit his offense.

At his sentencing hearing, appellant's admission of his offense remained in question. The trial court noted that appellant might be unable to recall the offense as a result of the psychological defense mechanism known as "denial." The court expressed concern that such denial would prevent successful treatment of appellant in the Bonneville sex abuser program. In response to this problem, the Bonneville representative specifically reserved the option to bring appellant back into court if his denial prevented effective treatment. In further response, the trial court specifically warned appellant that it would rely heavily upon the professional judgment of the Bonneville staff to determine whether he was making adequate treatment progress, and therefore complying with probation. The sole limitation was that the Bonneville staff's judgment not be arbitrary or capricious. Appellant indicated that he understood this.

■ Appellant now argues, in effect, that his failure to admit his offense resulted from his psychological denial, and that he was inadequately apprised that this denial, beyond his conscious control, could result in the loss of his probation. We disagree, because appellant's probation, as regards treatment in lieu of prison, was specifically conditioned upon the judgment of the Bonneville staff, without regard to whether recall of his offense was a matter within his conscious control. As noted, the record demonstrates that appellant was clearly informed of this condition. Therefore, his probation was properly revoked. *Compare State v. Hodges*, 798 P.2d 270, 278 (Utah Ct.App.1990), *cert. denied*, No. 900501 (Dec. 26, 1990) (probationer not informed of need to make treatment progress at rate judged adequate by treatment staff).

Appellant was correctly advised under Rule 11, Utah Rules of Criminal Procedure, that his plea agreement did not bind the court to the State's sentencing recommendation. At sentencing, it was made clear to

appellant that the maintenance of his probation depended upon the clinical judgment of the treatment facility where he was placed in lieu of incarceration. Accordingly, appellant's plea was properly accepted, his probation revocation was proper, and there was no error in the trial court's refusal to allow appellant to withdraw his no contest plea.

## CONCLUSION

For the foregoing reasons, the trial court's denial of appellant's motion to withdraw his guilty plea is affirmed.

JACKSON, J., concurs.

RUSSON, Judge (concurring):

I concur in the court's opinion, but write separately to offer further clarification of post-*Gibbons* analysis of Rule 11, Utah Rules of Criminal Procedure.

I agree that in determining whether a plea has been knowingly and voluntarily made, a review of the affidavit and the colloquy between the judge and the defendant at the time of taking the plea is necessary. What is important is not the particular format followed by the trial judge, but rather, whether the plea has been knowingly and voluntarily made in strict compliance with Rule 11.

There is nothing sacrosanct about an exchange between a trial judge and a criminal defendant at the time of taking a guilty plea. A guilty plea is most often received in a crowded courtroom with the defendant, often in shackles, looking up at a judge who, in black robe, peers down from an elevated bench. The judge questions the defendant while everyone in the courtroom watches and waits. Silence in such environment can be deafening, and the pressure immense. The situation impels the defendant to immediately answer the judge's questions.

However, where an affidavit is used, the defendant has privacy and time to prepare, review, and discuss the affidavit with his lawyer. No one is watching and waiting. There are no time limitations. The defendant has the opportunity to ask his lawyer the meaning of certain words and phrases. Consequently, there is more assurance of a knowing and voluntary plea when an affidavit is utilized than when it is not. Of course, the trial judge must still be satisfied, by personal inquiry of the defendant, that the defendant actually read the affidavit, reviewed it with counsel, and understands it.

I do not believe that the Utah Supreme Court in *State v. Gibbons*, 740 P.2d 1309 (Utah 1987), intended that trial judges must doubt the affidavit of the defendant and personally inquire as to the content of each and every statement made therein. This is borne out in *State v. Smith*, 777 P.2d 464 (Utah 1989), where the Utah Supreme Court looked to both the affidavit and the colloquy between the judge and the defendant at the time of taking the guilty plea before finding that the record failed to establish compliance with Rule 11. The court stated:

> In order for defendant's guilty plea to be valid and in compliance with rule 11(e)(5) of the Utah Rules of Criminal Procedure and *State v. Gibbons*, the record must show that he was unequivoca[lly] and clearly informed about the sentence that would be imposed. Such evidence does not exist *either* in the affidavit regarding the plea bargain *or* in the transcript of the guilty plea. Thus, rule 11(e) and *State v. Gibbons* require the vacating of defendant's guilty plea on the ground that it was not knowingly and voluntarily made.

*Id.* at 466 (emphasis added)

It is clear, of course, that in *Gibbons*, the Utah Supreme Court did place upon the trial judge the burden of ensuring strict compliance with Rule 11. The judge must satisfy him—or herself that where an affidavit is used, the defendant has read and understood it. The amount of inquiry in this regard will depend upon the circumstances. A defendant who is a college graduate and who informs the judge that he has read his affidavit, discussed it with his attorney, and understands it will natu-

rally not require the kind of inquiry as will a defendant who has no education and little or no grasp of the English language.

Accordingly, I fully concur with the majority opinion in the present case wherein the entire record, that is, the affidavit and the exchange between the judge and the defendant, was examined in determining that there had been strict compliance with the requirements of Rule 11.