HARRIS, Judge (concurring)
¶40 I join in full in the excellent majority opinion in this case. The trial court made a factual finding that Defendant's no-contest plea was knowingly and voluntarily given, and that factual finding was amply supported by evidence in the record, including sworn testimony offered by several witnesses at the evidentiary hearing. Because the trial court properly found that Defendant's plea was knowing and voluntary, I agree that the court's decision to deny Defendant's motion to withdraw his plea should be affirmed.
¶41 I write separately, however, to further discuss the plea colloquy between Defendant and the trial court in this case. As the lead opinion acknowledges, the plea colloquy in this case was "far from the model colloquy envisioned by rule 11." See supra ¶34 (citing Utah R. Crim. P. 11 ). Section (e) of that rule contains eight separate subparts, and instructs trial courts that they "may not accept" a plea until "the court has found" that the requirements of all eight subparts are met. See Utah R. Crim. P. 11(e) ; see also id. 11(l) (emphasizing, however, that strict compliance with the rule's requirements is not necessary so long as "substantial rights" are not affected).
¶42 Because there are so many specific requirements set forth in rule 11, conducting a plea colloquy that substantially complies with the rule's requirements takes quite a bit of time. A court intending to conduct a gold-plated plea colloquy-one that would, orally and on the record, adequately cover each of rule 11 's eight requirements-would likely need to devote a significant period of time to each such endeavor, even if the colloquy goes smoothly, which it does not always do. And, given the nature of modern criminal law-and-motion calendars[4] -the most common context in which plea colloquies arise-this is time that trial judges simply do not have.
¶43 In an attempt to make the process more efficient, written plea agreement forms have been developed that contain the information required by rule 11. Indeed, rule 11 itself allows this, specifically stating that the findings required by the rule "may be based on questioning of the defendant on the record or, if used, a written statement reciting these factors." See Utah R. Crim. P. 11(e). The idea is that, if a defendant has taken the time to read the plea agreement form (or have it carefully explained to him by counsel) and has come to understand its contents, a busy trial judge will not need to take the time in court, with dozens of other cases waiting, to painstakingly go through each of the requirements of rule 11 for each plea. See State v. Mora , 2003 UT App 117, ¶ 19, 69 P.3d 838 (stating that "[a] sufficient [plea] affidavit may be used to promote efficiency during a plea colloquy"), disagreed with on other grounds by State v. Lovell , 2011 UT 36, ¶¶ 65-66, 262 P.3d 803. Instead, the trial court can conduct a truncated plea colloquy designed primarily to ascertain that the defendant is in a proper state of mind to make a major decision like pleading guilty to a crime, and that the defendant has read the plea agreement form (or had it carefully *1260 explained to him) and has come to understand its contents.
¶44 Of course, the efficacy of this system depends on two facts being true: (1) that the plea agreement form really does contain all of the information that rule 11 requires, and (2) that the defendant really does understand the contents of the form. See State v. Smith , 812 P.2d 470, 477 (Utah Ct. App. 1991) (stating that, before a plea agreement form can be "incorporated into the record," the trial court "must conduct an inquiry to establish that the defendant understands the [form] and voluntarily signed it"); see also Mora , 2003 UT App 117, ¶ 20, 69 P.3d 838 (determining that the plea agreement form "was not properly incorporated into the record" where the trial court "made no inquiry into whether [the defendant] had read, understood, and acknowledged" the form). Indeed, rule 11 itself mandates that a written plea agreement form may only be used "after the court has established that the defendant has read, understood , and acknowledged the contents" of the form. See Utah R. Crim. P. 11(e) (emphasis added); see also State v. Collins , 2015 UT App 214, ¶ 7, 359 P.3d 664 (focusing on whether the trial court had, during the plea colloquy, ascertained whether the defendant "understood everything in the plea affidavit" and whether the defendant "understood the resulting proposed plea agreement"). In the process of accepting pleas, it is crucial that trial courts take steps necessary to ascertain that the defendant understands the contents of the written plea agreement form.[5]
¶45 In this case, Defendant raises no issue-at least not in a timely manner, see supra ¶21 & n.1-with the terms of the written plea agreement form itself. Instead, Defendant asserts that his plea was not knowing and voluntary, because he claims that he did not fully understand the terms of his plea before agreeing to enter it. In order to resolve that question in this case, the trial court found it necessary to schedule and hold a three-hour evidentiary hearing, in which five witnesses testified, some of whom traveled to Logan from Salt Lake City. As noted, I agree that the trial court's ultimate resolution of that question should be affirmed.
¶46 But I lament the fact that a separate evidentiary hearing was required in this case, and that such a hearing was apparently required, at least in part, because of infirmities in the truncated plea colloquy conducted by the trial court. As noted, there is nothing inherently wrong with a truncated plea colloquy that asks the written plea agreement form to do most of the heavy lifting. But the focus of any such truncated plea colloquy should be on attempting to ascertain whether and to what extent the defendant understands the plea agreement form. And in this respect, the trial court's plea colloquy was deficient.
¶47 Defendant correctly points out that the trial court never actually asked him whether he had read the plea agreement form or whether he understood its contents.[6] I can think of no more important question to ask in a truncated plea colloquy that intends, in an effort to save time on a busy calendar, to depend heavily on the contents of the written form. And I can think of no possible reason not to ask it.[7]
*1261 ¶48 Had that question been asked in this case, and had Defendant answered in the affirmative, there may have been no need for a separate evidentiary hearing in order to properly adjudicate Defendant's motion to withdraw his plea. See , e.g. , Collins , 2015 UT App 214, ¶ 7, 359 P.3d 664 (determining merely from examination of a plea colloquy-in which the defendant affirmatively answered the trial court's question about whether he understood the contents of the form-that the trial court's finding that the plea was knowing and voluntary should be affirmed). The trial court's failure to ask that question left it with no direct record evidence-without holding the separate evidentiary hearing-that Defendant understood the contents of the plea agreement form. In order to be able to make the factual finding necessary to adjudicate the motion to withdraw the plea, the trial court had to convene a separate evidentiary hearing, and rely (largely) upon testimony from Defendant's former attorney, who testified that she read the entire agreement to Defendant, "word-for-word," and that she spent "an incredible amount of time" over a two-hour period going over the agreement with Defendant "again and again and again." Similar evidence, however, could have and should have already been in the record, if the court had asked Defendant, at the original plea hearing, basic questions about his understanding of the contents of the plea agreement form.
¶49 In the end, the trial court reached the proper result. But its path in arriving at that destination was unfortunately inefficient and nonlinear. A more focused (but still truncated) plea colloquy would have gone a long way toward streamlining this case and making the process more efficient for all participants.

Many Utah trial judges manage large law-and-motion calendars each week, during which they accept pleas, impose sentences, consider probation issues, and adjudicate various pretrial motions. While these calendars vary from judge-to-judge and week-to-week, it is not at all unusual for a trial judge to be asked to handle over 100 cases on a single morning calendar, then turn around and handle 50 to 75 more in the afternoon. Given that each day contains only so many hours, it is no wonder that trial judges are always looking-and justifiably so-for ways to streamline the management of these busy calendars.

In cases where a particular defendant's first language is something other than English, or where a particular defendant has literacy issues, this inquiry also requires taking steps to first ascertain that the defendant can access the language of the written plea agreement form.

The trial court did ask Defendant if he was "thinking clearly" that day, and if he had "consumed any alcohol or drugs" that day that might impair his thinking or cloud his judgment. Defendant answered in the negative. The trial court also asked Defendant if he was aware that he was giving up "various Constitutional rights," referencing the plea agreement form, and whether he understood "the penalties" associated with his plea. Defendant responded in the affirmative. These are important questions also, and the trial court was correct to ask them.

In other legal contexts, having an opportunity to read and review a document-even where that opportunity is not taken-might be sufficient to legally bind a party to the contents of a document. But where a defendant is pleading guilty to a crime, the mere fact that the plea agreement form was available for defendant to peruse is by itself insufficient. See State v. Smith , 812 P.2d 470, 477 (Utah Ct. App. 1991) (stating that "if a[ ] [plea] affidavit is used to aid Rule 11 compliance, it must be addressed during the plea hearing" and the trial court "must conduct an inquiry to establish that the defendant understands the affidavit"). In this context, the defendant must not only have an opportunity to read the form, the defendant must actually understand the contents of the form. See Utah R. Crim. P. 11(e) (stating that a written plea agreement form may be used only if "the court has established that the defendant has read, understood, and acknowledged the contents" of the form).